IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION as Trustee for the Holders of the EQCC HOME EQUITY LOAN ASSET BACKED CERTIFICATES, SERIES 1998-3 and SELECT PORTFOLIO SERVICING, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>LA MAR GUNN,<br><br>Defendant. | No. _____ |

## VERIFIED COMPLAINT

Plaintiffs, U.S. Bank National Association, as Trustee for the holders of the EQCC Home Equity Loan Asset Backed Certificates, Series 1998-3 ("U.S. Bank") and Select Portfolio Servicing, Inc. ("SPS") (collectively, "Plaintiffs"), by their undersigned counsel, hereby file their Verified Complaint setting forth their claims against Defendant La Mar Gunn ("Defendant" or "Gunn") as follows:

## PARTIES

1. U.S. Bank is the record owner of the residential property located at 201 Cornwell Drive, Bear, DE 19701 (the "Property"). U.S. Bank is a national banking association with its main office located at 800 Nicollet Mall, Minneapolis, Minnesota 55402.

2. SPS is the servicing agent and attorney-in-fact for U.S. Bank. SPS is a Utah corporation with its principal place of business located at 3815 South West Temple, Salt Lake City, Utah 84115.

3. Defendant La Mar Gunn ("Defendant" or "Gunn") is a resident of the State of Delaware whose last known address is 1894 Windswept Circle, Dover, DE 19901. Defendant is a financial advisor and president and CEO of Gunn Wealth Management.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because the matter in controversy is between citizens of different states and exceeds the sum or value of $75,000.00, exclusive of interest and costs.

5. Venue of this action is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claims asserted in this Verified Complaint occurred in this judicial district.

## FACTUAL BACKGROUND

6. On November 21, 1997, Robert and Leisa Johnson (the "Johnsons") executed a $235,000 note in favor of Equicredit Corporation of Delaware ("Note"), which was secured by a mortgage of the same date ("Mortgage") on the Property.

7. Equicredit Corporation of Delaware was the holder of the Note, which was secured by the Mortgage. The Mortgage was then assigned from Equicredit of Delaware to Equicredit Corporation of America. Equicredit Corporation of America then assigned the Mortgage to Plaintiff U.S. Bank.

8. In May of 2001, the Johnsons defaulted on the Note and Mortgage.

9. In July of 2002, U.S. Bank filed a mortgage foreclosure action in the Superior Court of New Castle County against the Johnsons related to the Mortgage that U.S. Bank held as Trustee at Civil Action 02L-07-075 (the "Foreclosure Action"). A default judgment was entered

against the Johnsons on August 29, 2002, to which a motion to vacate was never filed. The final judgment was never appealed.

10. On or about July 31, 2003, Defendant first contacted SPS on behalf of the Johnsons seeking information on doing a short sale. Defendant advised that one of the Johnsons was considering filing for bankruptcy at that time.

11. The Property was scheduled to be sold at Sheriff's sale in 2003; however, the Johnsons filed for bankruptcy protection under Chapter 13 of the United States Bankruptcy Code on August 11, 2003, and the sale of the Property was stayed.

12. The Johnsons' Chapter 13 bankruptcy petition was dismissed without discharge on February 6, 2004. Shortly thereafter, the Property was again scheduled to be sold at Sheriff's sale. However, the sale of the Property was stayed for a second time by the Johnsons' filing for bankruptcy protection under Chapter 7 of the Bankruptcy Code on June 14, 2004.

13. U.S. Bank received relief from the automatic stay from the Bankruptcy Court, allowing it to proceed with the Sheriff's sale of the Property. On October 5, 2004, a first *pluries levari facias* was issued by the Prothonotary at U.S. Bank's request.

14. After receiving notice of the issuance of the first *pluries levari facias*, Defendant Gunn came forward and claimed that he, not the Johnsons, owned the Property.

### Gunn's Involvement with the Property

15. Gunn first made an appearance in the Foreclosure Action on November 29, 2004, and claimed to be the owner of the Property.

16. Gunn purportedly purchased the Property from the Johnsons on December 16, 2003, and received a quitclaim deed from the Johnsons on that date. The quitclaim deed was recorded with the New Castle County Recorder of Deeds on March 4, 2004.

17. The Johnsons, after being referred to Gunn for financial advice related to the foreclosure on the Property, have denied under oath knowingly giving Gunn a quitclaim deed and assert they engaged Gunn to arrange a short sale and restore their credit before the Sheriff's sale took place. *See* Exhibit A.

18. The Johnsons did not know that Gunn intended to take the Property for himself and never consented to Gunn taking possession of the Property. *See* Exhibit A.

19. Despite having knowledge of the Mortgage from working with the Johnsons, Gunn never paid U.S. Bank or the Johnsons any of the money owed under the Note and Mortgage. Gunn lived in the Property for over seven years without making a loan payment.

20. From the first time Gunn appeared in the Foreclosure Action in 2004 until December 9, 2008, Gunn was able to stay the Sheriff's sale of the Property through various legal maneuvers. *See* Exhibit B.

21. On December 9, 2008, however, the Property was sold at Sheriff's sale to U.S. Bank. *See* Exhibit C at 32.

22. Even after the sale of the Property to U.S. Bank, Gunn continued his legal challenges to the foreclosure.

23. Gunn filed a Motion to Set Aside the Sheriff's sale, which was denied by the Delaware Superior Court on January 30, 2009. *See* Exhibit C at 43.

24. Gunn appealed the denial of his Motion to Set Aside the Sheriff's sale to the Delaware Supreme Court. The Supreme Court affirmed the Superior Court's denial of Gunn's Motion to Set Aside the Sheriff's sale on June 30, 2010. *See* Exhibit D.

25. A different and junior mortgage on the Property was also the subject of an action brought by Gunn against Wells Fargo & Company ("Wells Fargo") and removed to the United

States District Court for the District of Delaware by Wells Fargo, at C.A. No. 10-cv-00066-SD on January 27, 2010. Gunn's claims of fraud and violations of the Truth in Lending Act ("TILA") against Wells Fargo were dismissed on July 13, 2010.

### U.S. Bank Takes Possession of Its Property

26. After the Delaware Supreme Court affirmed the Superior Court's denial of Gunn's Motion to Set Aside the Sheriff's sale, the Sheriff's Deed was issued on August 11, 2010, and recorded with the New Castle County Recorder of Deeds on August 23, 2010. *See* Exhibit E.

27. On September 1, 2010, Gunn was notified by letter of U.S. Bank's intent to take possession of the Property. *See* Exhibit F.

28. After receiving no response to its letter, on September 22, 2010, U.S. Bank filed a rule to show cause why a Writ of Possession should not be issued.

29. A hearing was scheduled on the Rule to Show Cause on November 12, 2010, and the Writ of Possession was issued at the time of the hearing. *See* Exhibit G.

### Gunn's Unsuccessful Quiet Title Action

30. On October 21, 2010, Gunn filed a complaint in the Delaware Court of Chancery captioned: *La Mar Gunn v. U.S. Bank*, C.A. No. 5917-MG, seeking to quiet title in his name, to obtain injunctive relief precluding U.S. Bank from selling the Property, and to obtain damages for unjust enrichment.

31. On January 31, 2011, then-Master (now Vice Chancellor) Glasscock issued a report granting U.S. Bank's motion to dismiss Gunn's quiet title and injunctive relief claims. *See* Exhibit H.

32. Gunn's unjust enrichment claim was dismissed on June 2, 2011. *See* Exhibit I.

33. In connection with the quiet title action, on November 12, 2010, Gunn filed a *lis pendens* with the Register in Chancery. On December 29, 2010, the *lis pendens* was recorded with the New Castle County Recorder of Deeds.

34. Then-Master (now Vice Chancellor) Glasscock granted U.S. Bank's motion to cancel the *lis pendens* on April 19, 2011, and the Court entered an order directing the Recorder of Deeds to cancel Gunn's *lis pendens* on the Property on June 19, 2011. *See* Exhibits J & K.

### Execution of the Writ of Possession

35. The Sheriff of New Castle County scheduled the Writ of Possession to be executed on February 1, 2011 at 10:00 a.m.

36. Upon execution of the Writ of Possession, Plaintiffs found that Gunn had significantly damaged its Property. Gunn, either himself and/or through others, removed the front door to the Property, leaving the front of the house open to the elements. *See* Exhibit L.

37. Further inspection of the Property revealed that light fixtures were ripped out of the ceiling, molding around the doors was ripped off and left in a pile, and appliances, such as the refrigerator, dishwasher, garbage disposal and washer and dryer were removed. Most boldly, the furnace was removed from the basement, leaving the house with no heat. *See* Exhibit L. Counsel for SPS notified the New Castle County Police of Gunn's conduct, and on February 1, 2011, an initial crime report was filed by the responding officer.

38. Plaintiffs hired a third-party to appraise the Property of damages and repairs that would need to be completed to make the Property habitable. It is estimated that the Property will require $51,532.21 in repairs. This estimate does not include the costs of replacing the appliances that were removed from the Property by Gunn. *See* Exhibit M.

### Gunn's Continued Interference in the Sale of the Property and Harassment of Plaintiffs

39. Despite the fact that the Delaware courts have repeatedly affirmed that U.S. Bank is the lawful owner of the Property, Gunn continues to claim he is the owner of the Property and is attempting to interfere in Plaintiffs' marketing and sale of the Property.

40. In addition, Gunn continues to harass Plaintiffs, their agents and employees.

41. For example, on September 16, 2011, Gunn filed a notice of *lis pendens* entitled "Public Notice" with the New Castle County Recorder of Deeds in which he falsely stated that the foreclosure sale was illegal and that he was the record owner of the Property. *See* Exhibit N. Said notice was also glued to the Property.

42. By way of further example, on July 26, 2011, Gunn filed a complaint against "EQCC Home Equity Loan Asset Backed Series 1998-3," "EQCC Home Equity Loan Asset Backed Series 1998-2," and AMBAC Assurance Corporation in the United States District Court for the Southern District of New York, at C.A. No. 11-cv-05497 (the "New York Action"). In the New York Action, Gunn has made the same claims with respect to his purported ownership of the Property that have been previously considered and dismissed by the Delaware courts. *See* Exhibit O.

43. Furthermore, in his complaint in the New York Action, Gunn has misstated facts under penalty of perjury. For example, Gunn stated in that complaint that he was given "less than 24 hours to pack and move out" of the Property. *See* Exhibit O. However, the record clearly demonstrates that the Writ of Possession was issued on November 12, 2010, but was not executed until February 1, 2011. *See* Exhibit G.

44. By way of further example, on August 5, 2011, Gunn filed an ethics complaint with the New Castle County Board of Realtors against the real estate agent acting on behalf of

Plaintiffs. In the ethics complaint, Gunn falsely claims that Plaintiffs' agent was deceiving potential buyers and improperly marketing the Property because Gunn is the "true titleholder" to the Property. *See* Exhibit P.

45. By way of further example, Gunn has sent harassing emails to U.S. Bank executives in which he continues to repeat his claims about the impropriety of the foreclosure sale, despite the fact that his claims have been dismissed by the Delaware courts and despite the fact that he has been told repeatedly by counsel for Plaintiffs that all communications with U.S. Bank are to be made through its counsel. *See* Exhibit Q.

46. By way of further example, on October 24, 2011, Gunn sent an email, one of several communications, to counsel for Plaintiffs in which Gunn accused the undersigned firm and its attorneys of making misrepresentations to the court during the course of the aforementioned litigation, and threatened suit if counsel did not respond to his email within 48 hours. Gunn provided no evidence to support his claims of the undersigned firm's purported misrepresentations.

47. On October 24, 2011, SPS entered into an agreement of sale with a potential buyer for the Property in the amount of $260,000.

48. On October 14, 2011, counsel for SPS was informed by the Office of the County Attorney of New Castle County that the Recorder of Deeds will not cancel any filing made by Defendant without a court order directing the Recorder of Deeds to do so.

49. By way of further example, on November 4, 2011, Gunn sent a document entitled "NOTICE BY AFFIDAVIT OF FELONY CRIME" to counsel for a prospective buyer of the Property. *See* Exhibit R. In that document, Gunn falsely accused SPS, U.S. Bank and its attorneys of criminal fraud in relation to the Property. Gunn demanded that counsel for the


potential buyer respond to this document within three days of receipt. Exhibit R at 8.

50. On November 8, 2011, counsel for the aforementioned potential buyer informed SPS that they potential buyer would not proceed with the closing of the sale of the Property, and cited the title issues created by Gunn and his false allegations as the basis for his decision. *See* Exhibit S.

51. On November 15, 2011, Gunn filed an "ACTION FOR EJECTMENT" against "EQCC Home Equity Loan Trust 1998-2," "EQCC Home Equity Loan Trust 1998-3," and "Ambac Assurance Corporation" in the New Castle County Superior Court based on the false representation that he is "the legal owner" of the Property ("November 2011 Superior Court Action"). *See* Exhibit T.

## COUNT I
## TRESPASS TO REAL ESTATE

52. Plaintiffs reallege paragraphs 1-51 as if fully stated herein.

53. U.S. Bank gained right to possession of the Property and all fixtures attached to and contained within it on December 9, 2008, and had a superior interest in the Property since the issuance of the Mortgage to the Johnsons on November 21, 1997.

54. Gunn had actual notice of the ongoing Foreclosure Action on the Property at the time he obtained the putative quitclaim deed from the Johnsons.

55. At a minimum, having occupied the Property, Gunn owed Plaintiffs a duty not to damage or destroy the Property in which U.S. Bank claimed an interest.

56. Prior to the execution of the Writ of Possession on February 1, 2011, Gunn breached his duty by either personally, and/or through others, by refusing to leave peacefully and damaging the Property, in which he had no legal right, title or interest.

57. Gunn did not have a right to refuse to leave peacefully and to damage the Property.

58. As a result of the destruction to the Property caused by Gunn, the value of the Property has been greatly diminished.

59. In addition, on or about September 16, 2011, Gunn and/or agents acting on his behalf, unlawfully entered the Property to post the "Public Notice" filed with the New Castle County Recorder of Deeds.

60. For the Property to be rehabilitated to its prior state, Plaintiffs will have to expend significant sums of money to make the Property habitable.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendant, and respectfully pray that this Court grant the relief requested following the final paragraph of this Verified Complaint.

## COUNT II
## CONVERSION

61. Plaintiffs reallege paragraphs 1-60 as if fully stated herein.

62. Prior to the execution of the Writ of Possession on February 1, 2011, Gunn, or others acting on his behalf, removed and took with him the front door, furnace, refrigerator, dishwasher, garbage disposal, washer & dryer, and several light fixtures.

63. Gunn did not have a right to the aforementioned fixtures and appliances and unlawfully converted them to be within his possession.

64. By removing the aforementioned fixtures and appliances from the Property, Gunn wrongfully interfered with U.S. Bank's right of possession and dominion over the Property.

65. Gunn, therefore, is liable for damages for all losses incurred by Plaintiffs as a result of his conduct and for punitive damages.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendant, and respectfully pray that this Court grant the relief requested following the final paragraph of this Verified Complaint.

## COUNT III
## UNJUST ENRICHMENT

66. Plaintiffs reallege paragraphs 1-65 as if fully stated herein.

67. Gunn claims that he obtained an interest in the Property on or about December 16, 2003, the date of the issuance of the putative quitclaim deed.

68. At the time Gunn allegedly obtained an interest in the Property, he knew that U.S. Bank was prosecuting the Foreclosure Action against the Johnsons, based upon a first priority mortgage, and had already obtained a judgment of foreclosure thereon.

69. When Gunn purportedly acquired the Property by quitclaim deed, he chose to ignore and intentionally avoid all obligations to U.S. Bank, which he had knowledge of at the time he acquired his alleged interest in the Property.

70. For over seven years, Gunn acted in such a way as to prevent Plaintiffs from taking control of the Property, and continues to do so today.

71. Gunn has been unjustly enriched by being able to live in the Property for over seven years without having to meet any obligations, financial or otherwise, to Plaintiffs.

72. The fair market rental value for the Property for the time period in question was in excess of $500 per month, or in excess of $42,000 over a period of seven years.

73. Gunn's unjust retention of the Property for over seven years caused a loss to Plaintiffs in that they have not been able to exercise control over the Property or recoup losses associated with Gunn's failure to meet the obligations associated with U.S. Bank's first perfected security interest in the Property.

74. Gunn's unjust enrichment has caused U.S. Bank to lose its ability to enjoy its full rights associated with the Property and Gunn has enjoyed full use of the Property without providing U.S. Bank any compensation for its first perfected security interest, which he knew about at the time he took possession of the Property.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendant, and respectfully pray that this Court grant the relief requested following the final paragraph of this Verified Complaint.

## COUNT IV
## TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS OPPORTUNITIES

75. Plaintiffs reallege paragraphs 1-74 as if fully stated herein.

76. After executing the Writ of Possession, U.S. Bank took steps to sell the Property, including but not limited to engaging an agent to market the Property on its behalf.

77. Potential buyers have expressed interest in purchasing the Property to the agent for Plaintiffs. By way of example, on October 24, 2011, SPS entered into an Agreement of Sale with a potential buyer for the Property in the amount of $260,000.

78. On November 8, 2011, counsel for the aforementioned potential buyers informed SPS that the potential buyers would not proceed with the closing of the sale of the Property, and cited the title issues created by Gunn and his false allegations as the basis for his decision.

79. An agent representing potential buyers for the Property told counsel for SPS that the potential buyers are concerned that if they purchase the Property, they will be harassed by Gunn.

80. Gunn has intentionally interfered with the efforts of Plaintiffs and their agent to market and sell the Property by attempting to cloud title to the Property by filing a false notice of *lis pendens* and self-styled "Public Notice" with the Recorder of Deeds for New Castle County.

81. Gunn has further interfered with the efforts of Plaintiffs and their agent to sell the Property by posting several copies of a "Public Notice" on the Property in which he falsely claims to be the record owner of the Property.

82. Gunn has further interfered with the efforts of Plaintiffs and their agent to sell the Property by contacting counsel for a potential buyer and falsely accusing Plaintiffs and their attorneys of criminal fraud.

83. As a result of Gunn's intentional interference in Plaintiffs' efforts to sell the Property, U.S. Bank has been unable to sell the Property for its full value.

84. As a further result of Gunn's intentional interference in Plaintiffs' efforts to sell the Property, Plaintiffs have incurred significant legal and other expenses in an effort to demonstrate to potential buyers that U.S. Bank is the lawful owner of the Property.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendant, and respectfully pray that this Court grant the relief requested following the final paragraph of this Verified Complaint.

## COUNT V
## SLANDER OF TITLE

85. Plaintiffs reallege paragraphs 1-84 as if fully stated herein.

86. As set forth in the preceding paragraphs, Gunn has maliciously published false matter regarding the title to the Property through the publication and filing of his self-styled "Public Notice" and the false statements he has made to third-parties claiming that he is the legal owner of the Property.

87. As a result of Gunn's disparagement of the title to the Property, to date, Plaintiffs have been unable to sell the Property for its full value.

88. In addition, as a result of Gunn's actions, Plaintiffs have suffered special damages, including but not limited to impairment of the value of the Property, as well as legal and other expenses necessary to counteract Gunn's publication of false matter concerning the state of title to the Property.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendant, and respectfully pray that this Court grant the relief requested following the final paragraph of this Verified Complaint.

## COUNT VI
## ABUSE OF PROCESS

89. Plaintiffs reallege paragraphs 1-88 as if fully stated herein.

90. The Delaware courts, including the Supreme Court of Delaware, have dismissed Gunn's claims that he is the lawful owner of the Property.

91. The Delaware courts have repeatedly held that Plaintiff U.S. Bank is the lawful owner of record of the Property.

92. In spite of these rulings, Gunn continues to improperly use judicial processes by republicizing his misrepresentation in pleadings and filings that he is the lawful owner of record of the Property.

93. Gunn's institution of the New York Action, institution of the November 2011 Superior Court Action, and the filing of the notice of *lis pendens* on September 16, 2011 with the New Castle County Recorder of Deeds are all based upon the misrepresentation that he is the lawful owner of record of the Property.

94. Upon information and belief, Gunn instituted the New York Action to harass Plaintiffs, improperly cloud title to the Property, and prevent Plaintiffs from marketing and selling the Property in an effort to extract a settlement from Plaintiffs.

95. Upon information and belief, Gunn filed a self-styled "Public Notice" and notice of *lis pendens* on September 16, 2011, to harass Plaintiffs, improperly cloud title to the Property, and prevent Plaintiffs from marketing and selling the Property in an effort to extract a settlement from Plaintiffs.

96. Gunn's institution of civil proceedings in the New York Action and the November 2011 Superior Court Action, as well as the filing of the self-styled "Public Notice" and notice of *lis pendens* on September 16, 2011 with the New Castle County Recorder of Deeds have wrongfully interfered with Plaintiffs' legal right to market and sell the Property.

97. Gunn's actions demonstrate that he has an ulterior purpose in the use of the aforementioned judicial proceedings and that he has willfully engaged in actions that are not proper in the ordinary course of said proceedings.

98. As a result of Gunn's abuse of the judicial process Plaintiffs have suffered damages, including but not limited to their inability to sell the Property.

99. As a further result of Gunn's abuse of the judicial process, Plaintiffs have incurred significant legal and other expenses.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendant, and respectfully pray that this Court grant the relief requested following the final paragraph of this Verified Complaint.

### **RELIEF REQUESTED**

Plaintiffs respectfully request this Honorable Court to enter Judgments, Orders and Decrees granting the following relief:

    (a) Compensatory damages for the damage to the Property caused by Gunn and/or agents acting on his behalf;

(b) Compensatory damages for the Property that was unlawfully converted to Gunn's possession;

(c) Compensatory damages in an amount of the reasonable rate of rent for the time period Gunn spent in possession of the Property;

(d) Preliminary and permanent injunctive relief, pursuant to the All Writs Act, 28 U.S.C. § 1651(a), enjoining Gunn from filing any further actions, in any court, against Plaintiffs and/or any employee, agent or officer thereof, including the attorneys of Eckert Seamans Cherin & Mellott, LLC, or any party in privity to the Property, that are based on Gunn's misrepresentation that he is the lawful owner of record of the Property, without prior permission from this Court;

(e) Preliminary and permanent injunctive relief enjoining Gunn from filing any notices with the New Castle Recorder of Deeds relating to the Property;

(f) Ordering Gunn to pay all reasonable attorneys' fees, costs, and pre- and post-judgment interest; and

(g) Awarding Plaintiffs such other and further relief as this Court deems appropriate.

Respectfully submitted,

ECKERT SEAMANS CHERIN & MELLOTT, LLC

By: _/s/ Francis G.X. Pileggi_
Francis G.X. Pileggi (Bar No. 2624)
Jill Agro (Bar No. 4629)
300 Delaware Avenue, Suite 1210
Wilmington, DE 19801
(302) 425-0430
fpileggi@eckertseamans.com
jagro@eckertseamans.com
*Attorneys for Plaintiffs*

Dated: November 21, 2011