IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION as Trustee for the Holders of the EQCC Home Equity Loan Asset Backed Certificates, Series 1998-3 and SELECT PORTFOLIO SERVICING, INC., | : : : : : : | |
| Plaintiffs, | : : | |
| v. | : : | Civ. No. 11-1155-RGA |
| LA MAR GUNN, | : : : | |
| Defendant. | : : | |

Francis G. X. Pileggi, Esq.; Jill Kornhauser Agro, Esq.; Eckert Seamans Cherin & Mellott, LLC, Wilmington, Delaware; Counsel for Plaintiffs.

La Mar Gunn, Dover, Delaware; pro se defendant.

**MEMORANDUM OPINION**

March 16, 2012
Wilmington, Delaware

ANDREWS, U.S. District Judge:

Pending before the Court are Plaintiffs' Motion for Preliminary Injunction and Motion to Strike. (D.I. 4, 34.) For the reasons given below, the Court will grant in part and deny in part the Motion for Preliminary Injunction and will grant the Motion to Strike.

## BACKGROUND

At issue is property located at 201 Cornwell Drive, Bear, Delaware 19701 (the "Property"). Defendant La Mar Gunn asserts that he is the owner of property, but Delaware State Courts have ruled he is not. The Property was the subject of a foreclosure action. In 2004, Defendant intervened in the foreclosure action, *U.S. Bank v. Johnson*, C.A. No. 02L-07-075 (Del. Super Ct.), and was able to stay the Sheriff's sale of the Property until December 9, 2008, when the Property was sold to Plaintiff U.S. Bank National Association. In addition he filed lawsuits on April 13, 2009, *Gunn v. Select Portfolio Servicing, Inc.*, C.A. No. 09C-04-102 (Del. Super. Ct.), and on October 21, 2010, *Gunn v. U.S. Bank*, C.A. 5917-MG (Del. Ch.) raising ownership issues of the Property.[1] He failed to prevail in any of the actions.

As Defendant continued to avail himself of the judicial process in the Delaware Courts, U.S. Bank was unable to take possession of the Property until November 12, 2010 following the Superior Court of the State of Delaware's issuance of a writ of

---

[1]The Court takes judicial notice that, in January 2010, Defendant filed a lawsuit against Wells Fargo & Company to rescind the first mortgage on the Property in the Court of Common Pleas for the State of Delaware, C.A. No. CPU4-10-C000145. The action was removed to this Court by Wells Fargo & Co. *See Gunn v. Wells Fargo & Co.*, Civ. No. 10-066-SD, D.I. 1, ex. A (D. Del.), dismissed July 13, 2010.

2

possession in its favor. The Sheriff of New Castle County executed the writ of possession on February 1, 2011.

Despite rulings by the Delaware Courts, Defendant continues to assert that he is the lawful owner of the Property. On July 26, 2011, he filed a complaint in the United States District Court for the Southern District of New York claiming ownership of the Property. See Gunn v. Ambac Assurance Corp., Civ. No. 11-05497 (S.D.N.Y.). In addition, on November 15, 2011, he filed an action of ejectment in the Superior Court of the State of Delaware. See Gunn v. Ambac Assurance Corp., C.A. No. N11C-11-128 FSS (Del. Super. Ct.). Defendant has also filed a Notice of lis pendens with the New Castle County Recorder of Deeds wherein he states that the foreclosure sale was illegal and that he is the record owner of the Property. Someone (presumably either the Defendant or someone acting at his behest) glued the Notice of lis pendens to the Property. (D.I. 1, ¶ 41). Finally, Defendant filed an ethics complaint with the New Castle County Board of Realtors claiming that Plaintiffs' agent was deceiving potential buyers and improperly marketing the property because Defendant is the owner of the Property. As a result Plaintiffs U.S. Bank and Select Portfolio Servicing, Inc. (together "Plaintiffs") have been unable to sell the property.

Plaintiffs move to enjoin Defendant, pursuant to the All Writs Act, from filing future actions in any court against them or any employee, agent, or officer thereof, including the attorneys of Eckert Seamans Cherin & Mellott, LLC, or any entity in privity to the Property, based on Defendant's misrepresentations that he is the lawful owner of record of the Property, without prior permission from the Court. Plaintiffs further seek issuance of a preliminary injunction to enjoin Defendant from representing to any

individual or entity, by any form of communication, that he is the owner of the Property. Defendant opposes the motion on the grounds that this Court lacks jurisdiction[2] and Plaintiffs lack standing.[3] (*See* D.I. 15; D.I. 25, at 37.)

**STANDARD OF REVIEW**

**All Writs Act**

The All Writs Act provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Typically, the All Writs Act has been used by federal courts to enjoin action by state courts that threatens the federal court's jurisdiction. *See Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 328 (3d Cir. 2007). "In this context, the Anti-Injunction Act restricts injunctions under the All Writs Act that have the effect of staying a state court proceeding to those "expressly authorized by Act of Congress, or where necessary in aid of [a federal court's] jurisdiction, or to protect or effectuate its judgments." *Id.* (*quoting* 28 U.S.C. § 2283). In addition, the United States Court of Appeals for the Third Circuit has held that if a district court determines that a litigant's past and current lawsuits constitute a continuous pattern of "groundless and vexatious litigation," the All Writs Act permits the court, under exigent circumstances, to grant an Order enjoining the litigant from filing further actions without the permission of the

---

[2] Jurisdiction exists based on diversity of citizenship.

[3] Plaintiff U.S. Bank has been the lawful owner of the property since 2008.

Court. *See In re Oliver*, 682 F.2d 443, 445–46 (3d Cir. 1982) (issuing an injunction because plaintiff had filed over fifty frivolous civil rights cases).

The power conferred by the All Writs Act "is limited by two fundamental tenets of our legal system - the litigant's rights to due process and access to the courts." *Brow v. Farrelly*, 994 F.2d 1027, 1038 (3d Cir. 1993). In issuing such an injunction, the Court must comply with three requirements: (1) the Court may not restrict the litigant from filing claims absent exigent circumstances, such as a litigant's continuous abuse of the judicial process by filing meritless and repetitive actions; (2) if the Court finds that the circumstances warrant the imposition of an injunction, the Court must give notice to the litigant to show cause why the proposed injunctive relief should not issue; and (3) the scope of the injunction must be narrowly tailored to fit the particular circumstances of the case. *See Matter of Packer Ave. Associates*, 884 F.2d 745, 747 (3d Cir. 1989); *Gagliardi v. McWilliams*, 834 F.2d 81, 83 (3d Cir. 1987); *Chipps v. United States Dist. Ct. for the Middle Dist. of Pa.*, 882 F.2d 72, 73 (3d Cir. 1989).

The district court may not totally bar a litigant from filing claims. It may only enter an injunction directing that the litigant not file any claims without first being granted leave of court. *Abdul-Akbar v. Watson*, 901 F.2d 329, 333 (3d Cir. 1990). An injunction requiring leave of court is typically ordered in situations involving a litigant who has repeatedly filed complaints alleging claims that have already been fully litigated and where the pleadings raise issues identical or similar to those that have been adjudicated. *See e.g., Matter of Packer Ave. Assoc.*, 884 F.2d at 747 (injunction issued because plaintiff filed twenty-seven petitions re-litigating issues that had already been

5

disposed of in bankruptcy court); *In re Oliver*, 682 F.2d at 446 (injunction issued when plaintiff filed over fifty civil rights, habeas corpus and other types of cases in twelve years); *Crooker v. Delta Mgmt. Associates, Inc.*, 2010 WL 1390868, at *4 (M.D. Pa. Apr. 2, 1010) (injunction issued because plaintiff had filed more than 100 civil actions across the country); *In re Vora*, 2008 WL 4722516, at *1 (W.D. Pa. Oct. 21, 2008) (injunction issued when plaintiff filed over fifty lawsuits against various governmental agencies over a twenty year period). *But see, N'Jai v. Pittsburgh Bd. of Pub. Educ.*, 2011 WL 2413339 (W.D. Pa. June 10, 2011) (injunction not warranted as eight lawsuits did not amount to groundless or vexatious litigation).

### Preliminary Injunction

Four factors govern the Court's decision whether to issue a preliminary injunction. To obtain an injunction, Plaintiffs must demonstrate (1) that they are reasonably likely to prevail eventually in the litigation and (2) that they are likely to suffer irreparable injury without relief. *See Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 157 (3d Cir. 2002). If these two threshold showings are made then the Court considers, to the extent relevant, (3) whether an injunction would harm Defendant more than denying relief would harm Plaintiffs and (4) whether granting relief would serve the public interest. *Id.*

## DISCUSSION

### Vexatious Litigation

Plaintiffs move to enjoin Defendant from filing future actions in any court based on Defendant's misrepresentations that he is the lawful owner of record of the Property,

without prior permission from the Court. The type of injunction Plaintiffs seek is most frequently entered pursuant to the All Writs Act. *See Gagliardi*, 834 F.2d at 83.

Defendant was provided notice of Plaintiffs' motion. In addition, Plaintiffs' motion was discussed during the February 8, 2012 hearing. At that time, Defendant indicated to the Court that docket item 15 served as his response to the motion for injunctive relief. Accordingly, Defendant has had ample opportunity to voice his objections why injunctive relief should not issue. *See id.*

The typical use of the All Writs Act to aid a federal court's jurisdiction or to protect or effectuate its judgments in inapplicable in this case. The All Writs Act also provides a district court the power to enjoin a litigant from filing further actions without permission of the court if it determines that a litigant's past and current lawsuits constitute a continuous pattern of "groundless and vexatious litigation." *See In re Oliver*, 682 F.2d at 445-46. This type of prospective injunctive relief is "an extreme remedy" that "should only be used in exigent circumstances," and "the use of such measures against a pro se plaintiff should be approached with particular caution." *Id.* at 445 (citation omitted).

Notably, Defendant is not the type of serial filer against whom such injunctive relief is most frequently granted. Indeed, to date, Defendant has not filed one lawsuit in this district court. He was haled into this court by Plaintiffs and appears in the instant case as a defendant. He did appear as plaintiff in this district, but that was not by his choice, as the case had been removed from a state court. *See Gunn v. Wells Fargo & Co.*, Civ. No. 10-066-SD (D. Del.).

Although Defendant has filed four lawsuits in the Delaware Courts and one lawsuit in the United States District Court for the Southern District of New York, this Court is not convinced that the facts rise to the level of a pattern of groundless and vexatious litigation. *See Chipps*, 882 F.2d at 73. Courts typically impose injunctions in cases where a plaintiff has filed a multitude of lawsuits. The fact that Defendant has filed no lawsuits in this District, coupled with the filing of only five other lawsuits against Plaintiffs or their employees, agents, officers, etc., is not enough to constitute groundless or vexatious litigation, especially given Defendant's pro se status.

Finally, the Court finds it inappropriate to enjoin Defendant from filing in Delaware State Courts or other federal district courts, particularly those outside of the Third Circuit. *See Sieverding v. Colorado Bar Ass'n*, 479 F.3d 1340, 1344 (10th Cir. 2006). "It is not reasonable for a court in this Circuit to speak on behalf of courts in other circuits in the country; those courts are capable of taking appropriate action on their own." *Id.*; *see also Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 192 (5th Cir. 2008) (District Court abused its discretion in extending the prefiling injunction to filings in state courts, state agencies, and the Court of Appeals for the Fifth Circuit); *In re Martin-Trigona*, 737 F.2d 1254, 1262-63 (2d Cir. 1984) (District Court erred by extending filing restrictions to include state courts).

Defendant has filed no lawsuits in this Court. This Court does not have good grounds to restrict his access to the judicial system.

**Slander of Title**

Plaintiffs further request that Defendant be enjoined from representing to any individual or entity, by any form of communication, that he is the owner of the Property. They contend that all elements of injunctive relief have been met.

**Success on the Merits**. Plaintiffs argue that there is a reasonable probability that they will succeed on the merits of their slander of title claim. The elements of a slander of title claim are: "(1) the malicious (2) publication of (3) false matter concerning the state of title of property which (4) causes special damages." *Rudnitsky v. Rudnitsky*, 2000 WL 1724234 (Del. Ch. Nov. 14, 2000).

Plaintiffs argue that Defendant has acted with malicious intent in prosecuting multiple lawsuits. "To be malicious, the acts of Defendant must have been done with a wrongful or improper motive or with a wanton disregard of Plaintiffs' rights." Del. Super. Ct. Civ. P.J.I. § 12.4; *Kayne v. Pantone, Inc.*, 395 A.2d 369, 372-73 (Del. Ch. 1978); *Nix v. Sawyer*, 466 A.2d 407, 411-12 (Del. Super. Ct. 1983). Here, the record reflects that subsequent to Delaware Court rulings that U.S. Bank, and not Defendant, is the owner of the Property, Defendant filed a notice of lis pendens, affixed it to the Property, and contacted potential buyers regarding his interpretation of ownership of the Property. The evidence of record leads to the conclusion that there is a reasonable probability that Plaintiffs will succeed on the merits of this claim.

**Irreparable Injury**. Plaintiffs argue that they will suffer irreparable injury should injunctive relief not issue, noting that Defendant's actions directly impact their interest in the Property by clouding title to the Property and preventing them from selling the

9

Property. The Plaintiffs are not wholly consistent in their description of the Defendant's financial status. In the briefing in support of the request for the preliminary injunction, Plaintiffs reference the Defendant's request in other lawsuits for "in forma pauperis" status. (See D.I. 6, at 12 (citing Ex. E)). They state "it is highly unlikely that Plaintiffs will be able to collect damages from [Defendant]." At a status conference, however, the Plaintiffs' position was that they expected they would be able to collect on a judgment of $42,000 (or more). (D.I. 25, at 14-15). Thus, if the only basis for claiming irreparable injury is the inability to enforce a judgment, Plaintiffs have raised a substantial question about how strong their proof is.

In order to meet the irreparable harm requirement, Plaintiffs "must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following trial. The preliminary injunction must be the only way of protecting the plaintiff from harm." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989) (citations omitted). The "the injury must be of a peculiar nature, so that compensation in money cannot atone for it." *Morton v. Beyer*, 822 F.2d 364, 372 (3d Cir. 1987) (citation and internal quotation omitted).

The record indicates that Defendant's actions have caused harm to Plaintiffs. While the loss of money does not alone constitute irreparable harm, the evidence reflects that Plaintiffs' property interests are at stake. Defendant's actions have resulted in a cloud on the title and his actions have interfered with Plaintiffs' attempts to enter into contract for the sale of the Property. *See Glenn v. Dunlop*, 423 F. App'x 249, 254-55 (3d Cir. 2011) (evidence showing that a defendant's recorded documents clouded the title to property, thus impairing vendability or value, is a type of pecuniary

loss that satisfies the element of a slander of title claim). Accordingly, the Court finds that Plaintiffs have demonstrated irreparable injury.

**Harm to Defendant**. The Court sees no substantial harm to Defendant should he be enjoined from misrepresenting to potential buyers that he is the owner of the property when, in fact, he is not. The Delaware Courts have determined that he is not the owner of the Property and he has been evicted from the Property.

**Public Interest**. Finally, public interest favors the public's ability to ascertain the true owner of the Property. *See e.g., Shields v. Zuccarini*, 254 F.3d 476, 486 (3d Cir. 2001) (in trademark cases, "public interest . . . is a synonym for the right of the public not to be deceived or confused.").

In weighing the above factors, the Court finds that the balancing of interests weigh in favor of issuance of an injunction. However, the Court finds overly broad Plaintiffs' proposal that Defendant or any agent acting on his behalf, be enjoined from representing to any individual or entity, by any form of communication, that he is the lawful owner of the Property. The Court will narrow injunctive relief to preclude Defendant from contacting potential buyers, representing to potential buyers that he is the owner of the Property, and from posting notices of any kind on the Property.

**Bond Requirement**. Plaintiffs argue that, should a preliminary injunction issue, no security bond should be required. Rule 65 provides that that "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

"Although the amount of the bond is left to the discretion of the court, the posting requirement is much less discretionary. While there are exceptions, the instances in which a bond may not be required are so rare that the requirement is almost mandatory." *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 425 (3d Cir. 2010).

The Court exercises its discretion and will require Plaintiffs to post a nominal bond of $500 before the preliminary injunction will issue. The Court finds this amount will protect the parties' respective interests.

**COUNTERCLAIM**

Plaintiffs move to strike Defendant's Amended Complaint or Counterclaim. (D.I. 32, 34.) Proposed Third Party Defendant Ambac Assurance Corporation ("Ambac") seeks guidance from the Court on how to proceed. (D.I. 37.)

During the February 8, 2012 pretrial conference, Defendant stated that he intended to submit an amended answer with counterclaims and third-party claims adding new parties. The Court stated to Defendant, "make it a motion because I have some doubts . . . that Ambac Assurance Company needs to be added as a defendant." (D.I. 25, Feb. 8, 2012 Trans., 37.) Defendant disregarded the Court's direction and, on February 23, 2012, filed "Defendant and Counterclaimant's First Amended Complaint" without seeking leave of court. (D.I. 32.)

The Court will grant the Motion to Strike. Defendant must seek leave of court prior to filing an amended answer with counterclaims or third-party claims adding new parties.

**CONCLUSION**

For the above reasons, the Court will grant in part and deny in part Plaintiffs' Motion for Preliminary Injunction and will grant Plaintiffs' Motion to Strike. (D.I. 4, 38.) The preliminary injunction will not issue until Plaintiffs post a bond in the amount of $500. See Fed. R. Civ. P. 65(c).

An appropriate order will be entered.

Dated: March 16, 2012
Wilmington, Delaware

UNITED STATES DISTRICT JUDGE