IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION as Trustee for the Holders of the EQCC Home Equity Loan Asset Backed Certificates, Series 1998-3 and SELECT PORTFOLIO SERVICING, INC., <br><br> Plaintiffs, <br><br> v. <br><br> LA MAR GUNN, <br><br> Defendant. | Civ. No. 11-1155-RGA |

Francis G. X. Pileggi, Esq.; Jill Kornhauser Agro, Esq.; Eckert Seamans Cherin & Mellott, LLC, Wilmington, Delaware; Counsel for Plaintiffs.

La Mar Gunn, Camden Wyoming, Delaware; Pro se Defendant.

**MEMORANDUM OPINION**

December 10, 2012
Wilmington, Delaware

*[signature]*
ANDREWS, U.S. District Judge:

Pending before the Court is Plaintiffs' Motion for Contempt against Defendant La Mar Gunn (D.I. 90). A show cause hearing was held on September 10, 2012. For the reasons given below, the Court will deny the motion except as indicated.

The background of this case is set forth in the March 16, 2012 Memorandum Opinion and Order (D.I. 38, 39). On March 16, 2012, the Court enjoined Defendant from: (1) contacting, directly or indirectly, buyers or potential buyers of the property located at 201 Cornwell Drive, Bear, Delaware ("Property"); (2) representing, directly or indirectly, to buyers or potential buyers of the property located at 201 Cornwell Drive, Bear, Delaware, that he has any ownership or other interest in the property; and (3) posting notices of any kind on the property located at 201 Cornwell Drive, Bear, Delaware. (D.I. 39)

On June 14, 2012, Plaintiffs filed the instant motion on the grounds that Defendant violated the March 16, 2012 preliminary injunction. Defendant opposed the motion, denying that he had committed any contemptible acts (D.I. 96, ¶4), and, thereafter, the Court issued a Show Cause Order (D.I. 110) instructing Defendant to appear at a hearing to explain why he should not be held in civil contempt for failing to comply with the March 16, 2012 Order.

The hearing took place on September 10, 2012. The parties appeared and elected to stand on the submitted affidavits.[1] Neither side called a witness. According to Plaintiffs, Defendant's last contemptible conduct (except for his filing of a lawsuit)

---

[1] Plaintiffs did not submit supporting affidavits with their initial motion but, instead, waited until they filed their reply to Defendant's opposition to do so. (*See* D.I. 100.) I have some reservations about the procedure followed, as it essentially put the burden of going forth with evidence on Gunn.

occurred on June 5, 2012, more than three months before the hearing. (D.I. 96; Sept. 10, 2012 Tr. ("Tr.") 24.)

"Contempt proceedings are generally summary in nature and may be decided by the court on affidavits and exhibits without the formalities of a full trial." *nCube Corp. v. SeaChange Int'l, Inc.*, 809 F. Supp. 2d 337, 344 (D. Del. 2011).[2] To prove civil contempt, the moving party must prove three elements: (1) that a valid order of the court existed; (2) that the contemnor had knowledge of the order; and (3) that the contemnor disobeyed the order. *See Marshak v. Treadwell*, 595 F.3d 478, 485 (3d Cir. 2009). Each "element[] must be proven by 'clear and convincing' evidence, and ambiguities must be resolved in favor of the party charged with contempt." *John T. v. Delaware Cnty. Intermediate Unit*, 318 F.3d 545, 552 (3d Cir. 2003). "A contempt citation should not be granted if there is ground to doubt the wrongfulness of the party's conduct." *Harris v. City of Philadelphia*, 47 F.3d 1311, 1326 (3d Cir. 1995).

The first two elements of the test have been met: a valid court order exists (*i.e.*, the March 16, 2012 preliminary injunction order) and Defendant was aware of the order. The Court turns to the last element of the three-part test – whether Defendant disobeyed the order.

Plaintiffs raise ten instances wherein they assert that Defendant violated the March 16, 2012 Order. The Court indicated during the Show Cause hearing that, after considering the affidavits and arguments of the parties, it did not consider as contemptible the acts described by Plaintiffs as violations 1, 4, 8, 9, and 10. On April 6,

---

[2] On the other hand, it is less than preferable to have no live testimony. *See Marshak v. Treadwell*, 595 F.3d 478, 487 n.7 (3d Cir. 2009).

2

2012, a neighbor, not Defendant, confronted a real estate agent with a potential buyer at the Property (Pls.' violation 1; Tr. 9, 34-35), but the evidence did not support a finding that the neighbor was operating on post-preliminary injunction instructions. (Tr. 37). On May 21, 2012, Defendant recorded a notice of lis pendens, but the injunction did not preclude him from doing so. (Pls.' violation 4; Tr. 11). On May 25, 2012, Defendant served subpoenas upon the attorney for Stewart Title Company and Melvin Woloshin, the attorney for James Bangura, who purchased the Property (Pls.' violations 8, 9; Tr. 17-18) even though the subpoenas were issued outside the discovery deadline; but the preliminary injunction did not prohibit discovery violations, and the information sought by the subpoenas was relevant to the subject of this litigation. On September 7, 2012, Defendant filed a civil lawsuit in the Delaware Superior Court, Kent County, Delaware (Pls.' violation 10; D.I. 117), but Defendant was not enjoined from filing lawsuits.

The Court addresses the remaining asserted violations 2, 3, 5, 6, and 7. Plaintiffs contend that on April 6, 2012, Defendant telephoned real estate agent Pat Nowaczyk stating that he had been advised by his former neighbor, Mr. Green, that a realtor was on the property with a potential buyer, and that the property should not be marketed (Pls.' violation 2; D.I. 90, ex. 1; D.I. 100, ex. 1; Tr. 10.) Defendant denies that he contacted Nowaczyk and stated that he was contacted by Melvin Woloshin, the attorney for James Bangura, who purchased the Property on May 11, 2012. (D.I. 96.) In addition, during the Show Cause Hearing, Defendant stated that Nowaczyk, Woloshin, as well as the attorney for the title company, contacted him regarding his

3

intent towards the Property. (Tr. 38-39.)[3] Defendant further stated that he did not make initial contact with Nowaczyk; that it was Nowaczyk who initiated contact with him, followed by several "back and forth" exchanges via telephone. (Tr. 41.)

On May 21, 2012, Defendant sent Nowaczyk an email and attached to it a copy of the notice of lis pendens that Defendant recorded that day. (Pls.' violation 3; D.I. 100, ex. 1; Tr. 10.) Defendant does not deny sending the email. During the hearing, Defendant stated that he did not believe that he violated the March 16, 2012 Order because he emailed something that was public record and had been advised by Woloshin that he wanted to be kept abreast of events with the Property. (Tr. 41.)

Plaintiffs assert that on May 21, 2012, Defendant caused a copy of a notice of lis pendens to be affixed to the garage door of the house on the Property. Remax real estate broker Michael Eddy saw the notice affixed to the garage door and took a photograph of it. (Pls.' violation 5; D.I. 90, exs. 2-3; D.I. 100, ex. 2; Tr. 12-13.) Defendant denies posting the lis pendens notice on the property, and stated at the Show Cause Hearing that he does not know how it got there. (Tr. 31, 42-46.)

Plaintiffs assert that on May 23, 2012, Defendant called the New Castle County Police, summoned them to the Property, informed the responding officer that he was the real owner of the Property, and asked the police to remove Bangura, who was trespassing. (Pls.' violation 6; Tr. 13.) Defendant stated at the Show Cause hearing that he was contacted by neighbors who told him that strange people were on the

---

[3] Defendant's statements at the hearing, as they were not made under oath, are not evidence. I take them as argument, particularly as suggesting alternative possibilities about why things occurred as they did. A significant amount of what Defendant said was very similar to what was in his verified statement. (D.I. 96, at 8).

4

Property who claimed they were working for the owner. (Tr. 47.) Defendant became alarmed and wanted to verify who the workers were so he contacted the police to let them know that there existed a dispute over ownership of the property. (Id. at 47, 50.) The workers contacted Bangura, who appeared several minutes later. (Id. at 51.) The police suggested that Defendant remain away from the Property. (Id. at 49.) According to Defendant, the police communicated back and forth between he and Bangura and, on that day, he did not have any direct communication with Bangura. (Id. at 49.) The police advised Defendant that the issue was a court matter, that Defendant had to leave, and he did. (Id. at 49-50.) Defendant stated that he has never spoken to Bangura outside of a five or ten second telephone call and that he never represented to Bangura that he owned the Property. (Id. at 49.) Defendant denies telling Bangura that he was trespassing. (Id. at 48.)

Plaintiffs contend that on June 5, 2012: (1) Defendant called the New Castle County Police and stated that he had a valid court order that required he be given access to the property at 10:00 AM; (2) Defendant gained access and took numerous photographs; and (3) the events took place taken after the expiration of the April 8, 2012 discovery deadline. (Pls.' violation 7; Tr. 14.) Defendant sought entry and inspection of the Property, for discovery purposes, at a specific time and date pursuant to a subpoena issued to Eddy, but apparently not served upon Eddy. (D.I. 81; D.I. 96; Tr. 55.) Plaintiffs had filed a motion to quash the subpoena, but as of June 5, 2012, there had been no ruling. (Id.) Defendant called the police so there would be no breach of the peace and approached the Property with the police and the subpoena.

5

(Tr. 30-31.) Defendant did not indicate that he had a court order; he indicated that he had a subpoena. (*Id.* at 30.) The police received authorization from Bangura for Defendant's entry onto the property. (Tr. 67; D.I. 100, ex 3.) Defendant did not communicate with anyone other than the police. (D.I. 96.) Defendant took photographs with the police at his side once Bangura had authorized Defendant's entry onto the Property. (Tr. 67.)

There is a factual dispute with regard to asserted violation 2. It is clear from the evidence, that the facts as set forth by Plaintiffs and Defendant, are discrepant. Therefore, as to alleged violation 2, the Court finds that Plaintiffs did not prove contemptible conduct by clear and convincing evidence.

With regard to violation 3, although it appears that Defendant may have violated the injunction by contacting Nowaczyk by email, a finding of contempt is not appropriate because there are doubts as to the wrongfulness of his conduct. Defendant believed he was compliant with the Order and, in his view, took great pains to comply with it by informing Nowaczyk of an item of public record. Nor did Defendant make direct contact with Bangura. In light of the foregoing, the Court finds that Plaintiffs failed to prove by clear and convincing evidence that Defendant's conduct was wrongful as to violation 3.

There are factual disputes with regard to asserted violation 5. It is nevertheless hard to imagine who besides Defendant would have filed the lis pendens at the Recorder of Deeds on May 21, 2012, and have posted the lis pendens at the Property the same day. It is true that there is no direct evidence that Defendant was the poster. When the Defendant was asked who else might have done the posting, he had no suggestions. Sometimes circumstantial evidence is more compelling than direct

evidence. Further, there is no doubt that Defendant knew that posting a lis pendens at the Property was something he was prohibited from doing. Therefore, as to alleged violation 5, the Court finds that Plaintiffs did prove contemptible conduct by clear and convincing evidence.

Finally, with regard to asserted violations 6 and 7, there are factual disputes as to whether Defendant portrayed himself as the owner of the Property.[4] I have doubts about the wrongfulness of Defendant's conduct. Defendant stated at the Show Cause Hearing that, because he contacted the New Castle County Police, and not Bangura directly, he believed he was compliant with the March 16, 2012 order. Moreover, on one occasion, Bangura (albeit under some duress) gave Defendant permission to enter the Property for discovery purposes. While Defendant may have misinterpreted the March 16, 2012 Order, the Court cannot say based on clear and convincing evidence that his acts were contemptible. Accordingly, the Court finds that Plaintiffs failed to prove that Defendant's conduct was wrongful with regard to violations 6 and 7.

For the above reasons, the Court will grant Plaintiffs' Motion for Contempt as to asserted violation 5, and will otherwise deny the motion against Defendant (D.I. 90).

An appropriate order will be entered.

---

[4] This is the closest issue. Bangura's affidavit clearly states facts making out that Defendant stated to Bangura that Defendant was the owner of the property. There is absolutely no reason to doubt the credibility of Mr. Bangura. Nevertheless, there are certainly times where cross-examination helps get to the truth, and the brevity of the Bangura affidavit leaves me doubtful as to how well I understand the context in which the statement(s) were made.