IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION as Trustee for the Holders of the EQCC Home Equity Loan Asset Backed Certificates, Series 1998-3 and SELECT PORTFOLIO SERVICING, INC., | : : : : : | |
| Plaintiffs, | : : | |
| v. | : : | Civ. No. 11-1155-RGA |
| LA MAR GUNN, | : : | |
| Defendant. | : | |

Francis G. X. Pileggi, Dorothy Davis, and Jill Kornhauser Agro, Esquires; Eckert Seamans Cherin & Mellott, LLC, Wilmington, Delaware; Counsel for Plaintiffs.

La Mar Gunn, Camden Wyoming, Delaware; Pro Se Defendant.

## MEMORANDUM OPINION

March 4, 2014
Wilmington, Delaware

ANDREWS, U.S. District Judge:

Pending before the Court are Plaintiffs' motion for summary judgment (D.I. 97),

as well as Defendant's cross-motion for summary judgment (D.I. 150), motion to

dismiss (D.I. 159), motions to strike (D.I. 164, 171), motion to disqualify Plaintiffs'

counsel (D.I. 165), and motion for an independent inquiry and an order to show cause.

(D.I. 166). The Court has jurisdiction pursuant to 28 U.S.C. § 1332. For the reasons

given below, the Court will deny Plaintiffs' motion for summary judgment, will strike

Defendant's cross motion for summary judgment, hold the motion to dismiss in

abeyance, and will deny Defendant's motions to strike, motion to disqualify Plaintiffs'

counsel, and motion for an order to show cause.

## I.    PROCEDURAL AND FACTUAL BACKGROUND

Defendant La Mar Gunn unsuccessfully asserted ownership of property located

at 201 Cornwell Drive in Bear, Delaware in numerous court cases.[1]  Gunn purchased

---

[1]The Court takes judicial notice that Gunn has filed the following lawsuits asserting ownership of the property: *Gunn v. Select Portfolio Servicing, Inc.*, C.A. No. 09C-04-102 (Del. Super. Ct. Apr. 13, 2009); *Gunn v. U.S. Bank*, C.A. 5917-MG (Del. Ch. Aug. 18, 2011); *Gunn v. Ambac Assurance Corp.*, C.A. No. N11C-11-128 FSS (Del. Super. Ct. Mar. 21, 2012); *Gunn v. Ambac Assurance Corp.*, Civ. No. 11-05497 (S.D.N.Y. Aug. 6, 2012); *United States Bank Ass'n v. Johnson*, C.A. No. 02L-07-075 FSS (Del. Super. Ct. Mar. 21, 2012). In addition, Gunn filed a lawsuit against Wells Fargo & Company to rescind the first mortgage on the property in the Court of Common Pleas for the State of Delaware, C.A. No. CPU4-10-C000145, removed to this Court, *Gunn v. Wells Fargo & Co.*, Civ. No. 10-066-SD (D. Del. July 13, 2010), and dismissed. Gunn also filed notices of lis pendens with the New Castle County Recorder of Deeds stating that the foreclosure sale was illegal and that he is the record owner of the property. Gunn filed an ethics complaint with the New Castle County Board of Realtors claiming that Plaintiffs' agent was deceiving potential buyers and improperly marketing the property when Gunn owned the property. Finally, Gunn filed a complaint against the title insurers of the real property at issue which remains pending. *Gunn v. First Am. Fin. Corp.*, Civ. No. 13-174-RGA (D. Del.)

2

the property from its owners, Leisa and Robert Johnson, and it was the subject of a foreclosure action in *U.S. Bank v. Johnson*, C.A. No. 02L-07-075 (Del. Super. Ct.). The Superior Court of the State of Delaware found that Gunn "knew he was buying a property with a first mortgage[, and that he] also had actual notice that the note and mortgage were in serious default. *U.S. Bank Nat'l Ass'n v. Johnson*, 2010 WL 705723, at *3 (Del. Super. Ct. Feb. 25, 2010), *aff'd, Gunn v. U.S. Bank Nat'l Ass'n*, 998 A.2d 850 (Del. 2010). "Knowing the loan was in default and in foreclosure, Gunn purchased [an April 1998 mortgage on the property in issue] in November 2003. On December 16, 2003, Gunn purchased [the] property by quitclaim deed, which he recorded on March 4, 2004." *Id.* at *1. "On November 9, 2004, Gunn claimed ownership of the property and filed a motion to stay the sheriff's sale [of the property]." *Id.* The property was sold at the sheriff's sale on December 9, 2008 to Plaintiff U.S. Bank National Association as Trustee for the Holders of the EQCC Home Equity Loan Asset Backed Certificates, Series 1998-3. (D.I. 1, ex. E.)

On November 12, 2010, the Superior Court of the State of Delaware granted U.S. Bank a writ of possession of the property. (*Id.* at ex. G.) According to Plaintiffs, the Sheriff of New Castle County executed the writ of possession on February 1, 2011, and removed Gunn from the property. When U.S. Bank took possession of the property, it discovered damage to the property that included the removal of the front door, furnace, garbage disposal, dishwasher, refrigerator, washer and dryer, two exterior doors, eight interior doors, two sets of double doors, the interior and exterior HVAC units, seven interior ceiling light fixtures, two exterior light fixtures, molding

3

around the doors, and a stove hood in the kitchen and five broken sliding glass door panels, four broken windows, two broken one-car garage doors, broken bathroom fixtures, numerous large holes in the interior walls, damaged rugs, a disconnected kitchen sink, as well as other miscellaneous damage.

Plaintiffs filed their Complaint on November 21, 2011. Gunn answered and raised counterclaims against Plaintiffs. All counterclaims having been dismissed. (D.I. 1, 5, 23, 39, 42.) On May 11, 2012, Plaintiffs sold the property at issue. (D.I. 99, ex. 1). The case proceeds on the verified Complaint (D.I. 1), and it raises the following claims: Count I, trespass to real estate; Count II, conversion; Count III, unjust enrichment; Count IV, tortious interference with prospective business opportunities; Count V, slander of title; and Count VI, abuse of process. Plaintiffs seek compensation for lost rent, diminution in property value, and a permanent injunction to prevent future interference.[2]

On February 8, 2012, the Court entered a scheduling order (D.I. 24) that set a February 22, 2012 deadline for the joinder of other parties and amendment of pleadings (*id.* at ¶ 2), a discovery deadline of April 8, 2012 (*id.* at ¶ 3.a), and a dispositive motion deadline of July 8, 2012, (*Id.* at ¶ 7). Plaintiffs timely filed their motion for summary judgment. (D.I. 97). When the Court belatedly discovered that Gunn had not

_____

[2]On March 16, 2012, the Court enjoined Gunn from contacting potential buyers of the property, representing to potential buyers that he is the owner of the property, and from posting notices of any kind on the property. (*See* D.I. 39.) As noted, the property was sold during the pendency of this action. Gunn did not appeal the Order, although he has appealed a subsequent order finding him in contempt for violating the March 16, 2012 Order in part. (*See* D.I. 160.) The appeal was dismissed for lack of appellate jurisdiction on September 10, 2013. *See U.S. Bank Nat'l Assoc. v. Gunn*, No. 13-2310 (3d Cir. Sept. 10, 2013).

4

responded to the motion, it dismissed the motion without prejudice, deemed it refiled, and set a briefing schedule for responses to the motion. (See D.I. 149.)

Gunn filed his opposition to Plaintiffs' motion for summary judgment with a combined cross-motion for summary judgment (D.I. 150) and, on May 2, 2013, Gunn filed a motion to dismiss. (D.I. 159). Gunn did not seek leave to file the dispositive motions, and they were filed well past the dispositive motion deadline of July 8, 2012. Therefore, the cross-motion for summary judgment (D.I. 150) will be stricken and will not be considered.[3] The motion to dismiss (D.I. 159), while also untimely, concerns in part jurisdictional matters, and the Court believes it would be better to resolve the motion on the merits, and therefore that motion will remain pending. The Court will consider Gunn's opposition to Plaintiffs' motion for summary judgment that is contained in the combined filing. (D.I. 150).

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "could affect the outcome" of the proceeding. See Lamont v. New Jersey, 637 F.3d 177, 181 (3d Cir. 2011). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). The court will "draw all reasonable inferences in favor of the

---

[3]They are also repetitive and substantively meritless.

5

nonmoving party, and it may not make credibility determinations or weigh the evidence."
*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

If the moving party is able to demonstrate an absence of disputed material facts,
the nonmoving party then "must come forward with 'specific facts showing that there is
a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986);
*see also Matsushita*, 475 U.S. at 587. The mere existence of some evidence in support
of the nonmoving party, however, will not be sufficient for denial of a motion for
summary judgment. *Anderson*, 477 U.S. at 249. Rather, the nonmoving party must
present enough evidence to enable a jury to reasonably find for it on that issue. *Id.* If
the nonmoving party fails to make a sufficient showing on an essential element of its
case with respect to which it has the burden of proof, the moving party is entitled to
judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.   ANSWER TO COMPLAINT/RESPONSES TO REQUESTS FOR ADMISSIONS

Plaintiffs move for summary judgment on the grounds that there are no factual
disputes at issue. This is based upon their position that Gunn did not deny any of the
factual allegations in the Complaint and that he failed to timely answer or oppose
Plaintiffs' requests for admissions. Gunn opposes the motion (D.I. 150) on the grounds
that Plaintiffs lack standing and they failed to join several indispensable parties.

Gunn proceeds *pro se.* The Court finds that Gunn's global denial in his answer
(D.I. 5, ¶ 1) to the Complaint denies all allegations raised against him. In addition, the
Court exercises its discretion and considers Gunn's responses to the requests for
admissions. Plaintiffs served requests for admissions (D.I. 31) upon Gunn on February

6

22, 2012, and Gunn served his responses (D.I. 58) to the requests for admissions on April 25, 2012. Assuming Gunn received the request for admissions in three days, his responses were untimely by approximately one month. Plaintiffs contend that Gunn's responses should not be considered because they were untimely, and Gunn did not seek relief to excuse his delinquency.

Pursuant to Fed. R. Civ. P. 36(a)(3), a matter is admitted unless, within thirty days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party. A shorter or longer time for response may be stipulated by the parties or ordered by the court. *Id.* Although the language of Rule 36(a) seems to dictate a harsher result, courts have recognized that the court may accept untimely answers. *See, e.g., Kosta v. Connolly,* 709 F. Supp. 592, 594 (E.D. Pa.1989) ("We should not employ . . . [R]ule [36(a) ] to establish facts which are obviously in dispute or to answer questions of law."). Rule 36(b) provides that any matter deemed admitted under the Rule is conclusively established unless the Court permits withdrawal or amendment of the admission. Hence, the Court may, in its discretion, permit what would otherwise be an untimely answer to a request for admissions. *Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.,* 123 F.R.D. 97, 103 (D. Del. 1988). The Court should normally permit untimely answers when doing so would aid in the presentation of the merits of the action and would not prejudice the party who made the requests. *Flohr v. Pennsylvania Power & Light Co.,* 821 F.Supp. 301, 306 (E.D. Pa. 1993).

7

The request for admissions was served upon Gunn in one document referred to by Plaintiffs as the "First Set of Discovery upon Defendant, La Mar Gunn, pursuant to the Federal Rules of Civil Procedure." (D.I. 31). That document also included Plaintiffs' first set of interrogatories and requests for production of documents. On April 18, 2012, the Court extended the time for Gunn to respond to Plaintiffs' first set of interrogatories and requests for production of documents to April 25, 2012 - the date that Gunn filed his responses to the requests for admissions. Gunn's response to the request for admissions, while late, was not excessive, and was filed within the extended time-frame of other discovery sought by Plaintiffs. For these reasons, the Court finds that Plaintiffs were not prejudiced by the untimeliness of Gunn's responses to the request for admissions and will permit Gunn's answers pursuant to Fed. R. Civ. P. 36(b).

Gunn denies that: (1) in 2011, he caused to be filed the document entitled "Public Notice"; (2) he was in possession of the property from the year 2005 through February 1, 2011; (3) prior to vacating the property on February 1, 2011, he caused and/or permitted others known to him to remove the front door, furnace, garbage disposal, dishwasher, refrigerator and washer/dryer from the property; (4) he caused and/or permitted others known to him to cause the removal of certain items and damage to the property; and (5) the pictures attached to the Complaint (D.I. 1, ex. L) accurately reflect the condition of the property at the time he vacated it on February 1, 2011.

Gunn objected to and neither denied nor admitted whether: (1) in 2011, he caused to be displayed at the property a document entitled "Public Notice"; (2) in November 2011, he caused to be sent to a representative of a prospective buyer of the

8

property a document entitled "Notice by Affidavit of Felony Crime"; and (3) he caused copies of the documents attached to the Complaint (D.I. 1, ex. Q) to be sent to U.S. Bank.

## IV. DISCUSSION

### A. Count I, Trespass

Plaintiffs contend that summary judgment is proper as to Count I because Gunn had possession of the property without their permission for over two years, from December 9, 2008 until February 1, 2011. Under Delaware law, an intentional trespass occurs when three elements are proven: (1) the plaintiff has lawful possession of the land; (2) the defendant has entered onto the plaintiff's land without consent or privilege; and (3) the plaintiff shows damages. *Cochran v. City of Wilmington*, 77 A. 963 (Del. Super. Ct. 1908).

The property was sold on December 9, 2008 to U.S. Bank National Association as Trustee for the Holders of the EQCC Home Equity Loan Asset Backed Certificates, Series 1998-3. (D.I. 1, ex. E.) On November 12, 2010, the Superior Court of the State of Delaware granted U.S. Bank a writ of possession of the property. (*Id.* at ex. G.) Plaintiffs state, but provide no evidence, that the Sheriff of New Castle County executed the writ of possession on February 1, 2011, and removed Gunn from the property. Gunn denies that he was in possession of the property from 2005 through February 1, 2011. Because disputes of fact exist with regard to Gunn's possession of the property, the Court will deny summary judgment as to Count I.

9

## B. Count II, Conversion

Plaintiffs contend that summary judgment is proper on the conversion claim because Gunn refused to leave the property until February 1, 2011. Count II alleges that prior to the execution of the writ of possession Gunn, or others acting on his behalf, removed and took the front door, furnace, refrigerator, dishwasher, garbage disposal, washer and dryer and several light fixtures, thus unlawfully converting the fixtures and appliances. Conversion typically results from "any distinct act of dominion wrongfully exerted over the property of another, in denial of his right, or inconsistent with it. . . ." *Drug, Inc. v. Hunt*, 168 A. 87, 93 (Del. 1933). "It is well-settled in Delaware that conversion applies to chattel but not to real property." *Cornell Glasgow, LLC v. LaGrange Properties, LLC, 2012 WL 3157124*, at *5 (Del. Super. Ct. Aug. 1, 2012) (citations omitted). "Chattel is '[m]ovable or transferable property; personal property; esp., a physical object capable of manual delivery and not the subject matter of real property.'" *Id.* "Real property is '[l]and and anything growing on, attached to, or erected on it, excluding anything that may be severed without injury to the land.'" *Id.* For Plaintiffs to recover under a theory of conversion, they must prove precisely which property Gunn converted and that their interest in the property was viable at the time of the conversion. *See CIT Commc'ns Fin. Corp. v. Level 3 Commc'ns, LLC*, 2008 WL 2586694 (Del. Super. Ct. June 6, 2008).

According to Plaintiffs, Gunn refused to leave the property until February 1, 2011, and during that time they were denied the use and possession of the property. To the extent that Plaintiffs claim conversion of real property, said claim is not

10

actionable as a matter of law and must be dismissed. Plaintiffs additionally contend

that Gunn caused significant damage to the property. Gunn denies that he was in

possession of the property from 2005 through February 1, 2011 and denies that he

damaged the property, or that others known to him caused damage to the property.

Because disputes of fact exist as to the issue of conversion of Plaintiffs' chattel, the

Court will deny summary judgment as to Count II.

### C.    Count III, Unjust Enrichment

Plaintiffs contend that summary judgment is proper because Gunn was unjustly

enriched at their expense. Unjust enrichment is a cause of action based on the "unjust

retention of a benefit to the loss of another, or the retention of money or property of

another against the fundamental principles of justice or equity or good conscience."

*Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010). The elements of unjust

enrichment are "the unjust retention of a benefit to the loss of another, or the retention

of money or property of another against the fundamental principles of justice or equity

and good conscience." *Schock v. Nash*, 732 A.2d 217, 232 (Del. 1999). In determining

whether to award a remedy based on unjust enrichment, courts look for proof of the

following elements: (1) an enrichment; (2) an impoverishment; (3) a relation between

the enrichment and impoverishment; (4) the absence of justification; and (5) the

absence of a remedy provided by law. *Fitzgerald v. Cantor*, 1998 WL 326686, at *6

(Del. Ch. June 16, 1998).

According to Plaintiffs, Gunn improperly occupied the property from December 9,

2008, through February 1, 2011, without paying rent and precluding Plaintiffs' use,

11

thereby enriching Gunn and damaging Plaintiffs, and that during that time they were denied the use and possession of the property. In addition, they contend that there was no agreement that permitted Gunn to occupy the property and there was no justification for Gunn to deprive Plaintiffs of its use and possession. They further contend that Gunn's removal of the fixtures was without justification and caused them damage. Finally, Plaintiffs contend they had no recourse under contract law as Gunn was holding over unlawfully, and a remedy is not provided by law. Gunn denies that he was in possession of the property from 2005 through February 1, 2011 and denies that he removed fixtures from the property. Because there remain disputes of fact, the Court will deny summary judgment as to Count III.

### D.   Count IV, Tortious Interference with Prospective Business Opportunities

Plaintiffs contend that summary judgment is proper as to Count IV for tortious interference with prospective business opportunities because Gunn repeatedly interfered with Plaintiffs' attempts to sell the property. To establish a tortious interference with a prospective business opportunity claim, Plaintiffs must prove each of the following elements: (1) the reasonable probability of a business opportunity; (2) the intentional interference by defendant with that opportunity; (3) proximate causation; and (4) damages, all of which must be considered in light of a defendant's privilege to compete or protect his business interests in a fair and lawful manner. *DeBonaventura v. Nationwide Mut. Ins. Co.*, 428 A.2d 1151, 1153 (Del. 1981) (internal quotation marks and citation omitted).

12

To meet the reasonable probability of a business opportunity prong, a plaintiff "must identify a specific party who was prepared to enter into a business relationship but was dissuaded from doing so by the defendant and cannot rely on generalized allegations of harm." *Agilent Techs., Inc. v. Kirkland*, 2009 WL 119865, at \*7 (Del. Ch. Jan. 20, 2009) (internal quotation marks and citation omitted). Furthermore, "[t]o be reasonably probable, a business opportunity must be something more than a mere hope or the innate optimism of the salesman or a mere perception of a prospective business relationship." *Id.* (internal quotation marks and citations omitted).

To meet the intentional interference prong, a plaintiff must prove that the defendant's interference with a business opportunity was intentional and wrongful or improper. *Agilent Techs.*, 2009 WL 119865, at \*8. The interferer must also have "knowledge of the relationship or expectancy." *In re Frederick's of Hollywood, Inc.*, 1998 WL 398244, at \*5 (Del. Ch. July 9, 1998), *aff'd sub nom.*, *Malpiede v. Townson*, 780 A.2d 1075 (Del. 2001). When considering whether a defendant's actions were improper, the Court must assess these actions "in light of a defendant's privilege to compete or protect [his] business interests in a fair and lawful manner." *DeBonaventura*, 428 A.2d at 1153 (internal quotation marks and citation omitted). Threatened or filed litigation can constitute improper interference "if the actor has no belief in the merit of the litigation or if, though having some belief in its merit, he nevertheless institutes or threatens to institute the litigation in bad faith, intending only to harass the third parties and not to bring his claim to definitive adjudication." *Soterion*

13

*Corp. v. Soteria Mezzanine Corp.*, 2012 WL 5378251, at *14 (Del. Ch. Oct. 31, 2012) (citing Restatement (Second) of Torts § 767 (1979)).

Plaintiffs argue that Gunn improperly maintained possession of the property from December 9, 2008 through February 1, 2011, which prevented Plaintiffs from using, renting, marketing, or selling the property. As previously noted, Gunn denies this. They further argue that after February 1, 2011, Gunn continued to aggressively assert ownership of the property, cloud the property's title, and assert allegations of fraud and ethics violations against Plaintiffs, their counsel, and their agents to the extent that on November 8, 2011, a potential buyer for the property advised that it would not proceed with the closing of the sale of the property.

The November 8, 2011 letter from counsel for the potential buyer who advised that they were no longer proceeding with the purchase of the property makes no reference to Gunn but, rather, focuses on clearing title to the property. It is undisputed that Gunn aggressively asserted title to the property. Nonetheless, based upon the record before it, the Court has insufficient evidence to conclude that Gunn's litigious efforts to claim ownership to the property were made in bad faith given his adamant, albeit unsuccessful, assertions that the property belongs to him.

Because there remain disputes of fact, the Court will deny summary judgment as to Count IV.

### E. Count V, Slander of Title

Plaintiffs contend that summary judgment is proper as to Count V for slander of title because, despite court rulings that Gunn did not own the property, he asserted

14

ownership when he recorded and posted lis pendens notices on the property and informed potential buyers of the same. The elements of a slander of title claim are: (1) the malicious; (2) publication of; (3) false matter concerning the state of title of property which; (4) causes special damages. *Rudnitsky v. Rudnitsky*, 2000 WL 1724234 (Del. Ch. Nov. 14, 2000).

Plaintiffs argue that Gunn repeatedly and improperly interfered with the sale of the property by ignoring judicial determinations and falsely asserting legal ownership in the property. One of the elements that must be proven for Plaintiffs to prevail is whether Gunn acted maliciously. To be malicious, the acts of Defendant must have been done with a wrongful or improper motive or with a wanton disregard of Plaintiffs' rights. *See Kayne v. Pantone, Inc.*, 395 A.2d 369, 372-73 (Del. Ch. 1978); *Nix v. Sawyer*, 466 A.2d 407, 411-12 (Del. Super. Ct. 1983).

The Court is aware that it granted Plaintiffs injunctive relief, finding that there was a reasonable probability they would succeed on their slander of title claim and further finding that the record reflected that subsequent to Delaware Court rulings that U.S. Bank, and not Gunn, is the owner of the Property, Gunn filed a notice of lis pendens, affixed it to the property, and contacted potential buyers regarding his interpretation of ownership of the property. (*See* D.I. 38, 39.)

It is well established that "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). As the Third Circuit has acknowledged, many Circuits have recognized that "[a]ffidavits and

other hearsay materials are often received in preliminary injunction proceedings." *Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 718 (3d Cir. 2004) (listing cases). Conversely, there are strict rules governing the form of affidavits that may be considered in summary judgment proceedings. *Id.* ("Compare Fed. R. Civ. P. 56(e) (affidavits on summary judgment 'shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein') *with* Fed. R. Civ. P. 65 (no similar provision in rule governing preliminary injunctions)". Indeed, "consideration of the different policies that underlie Rules 56 and 65 indicates that the Rule 56(e) standard should not be imposed on applications under the latter rule." *Id.* (quotation omitted).

Plaintiffs rely upon Gunn's answer to the Complaint which, as previously discussed, is a global denial to the allegations as well as Gunn's responses the requests for admissions that, except for objections, deny the requests. While findings were made in favor of Plaintiffs at the injunctive relief stage, the more stringent summary judgment standards preclude summary judgment on the slander of title issue.

Because there exist disputes of fact, the Court will deny summary judgment as to Count V.

### F.    Count VI, Abuse of Process

Plaintiffs contend that summary judgment is proper as to Count VI because Gunn repeatedly and improperly interfered with the sale of the property by ignoring

16

judicial determinations and falsely asserting legal ownership in the property. The

requisites of an abuse of process claim under Delaware law are:

> (1) an ulterior purpose; and (2) a wilful act in the use of the process not
> proper in the regular conduct of the proceedings. * * * [S]ome definite act
> or threat not authorized by the process, or aimed at an objective not
> legitimate in the use of the process, is required. Merely carrying out the
> process to its authorized conclusion, even though with bad intentions,
> does not result in liability. Some form of coercion to obtain a collateral
> advantage, not properly involved in the proceeding itself, must be shown.

*Unit, Inc. v. Kentucky Fried Chicken Corp.*, 304 A.2d 320, 331 (Del. Super. Ct. 1973),

*overruled on other grounds*, *Mann v. Oppenheimer & Co.*, 517 A.2d 1056 (Del. Super.

Ct. 1986).

The Court finds there are genuine issues of fact whether Gunn had an improper

motive in seeking title to the property. While Gunn appears to have been overzealous

in his efforts to keep property he believed he owned, the Court, nonetheless, must

construe the facts in the light most favorable to Gunn as the non-moving party. The

Court is not prepared to find that summary judgment as to Count VI is appropriate.

Therefore, the Court will deny Plaintiffs' motion for summary judgment as to Count VI.

### G. Affirmative Defenses

In his Answer (D.I. 5), Gunn asserts seven affirmative defenses: lack of standing,

intent to defraud, failure to join parties, retaliation, failure to comply with the pooling and

servicing agreement, termination of real estate mortgage investment conduit status, and

violation of the Delaware Lawyers' Rules of Professional Conduct. Plaintiffs argue that

Gunn's affirmative defenses are barred under the doctrines of collateral estoppel and

res judicata, the *Rooker-Feldman* doctrine, comity, are without merit, and do not

17

prevent entry of summary judgment. As discussed above, the Court will deny Plaintiffs' motion for summary judgment. The Court notes that other than "lack of standing," the asserted defenses are not defenses at all to the claims raised. The Court, therefore, will only address the standing issue.

Gunn argues that summary judgment is not proper because U.S. Bank National Association as Trustee for the Holders of the EQCC Home Equity Loan Asset Backed Certificates, Series 1998-3 lacks standing to proceed. The property at issue was sold on December 9, 2008 to "U.S. Bank National Association as Trustee for the Holders of the EQCC Home Equity Loan Asset Backed Certificates, Series 1998-3," - *i.e.,* the Plaintiff - as evidenced by the Sheriff's Deed (D.I. 1, ex. E.) filed at the Recorder of Deeds in New Castle County, Delaware.[4] Gunn repeatedly raised the standing issue in numerous cases in the Delaware courts. As the Delaware Supreme Court noted in its May 26, 2011 decision, following the November 12, 2010 grant to the U.S. Bank for a writ of possession, Gunn raised as one of his grounds on appeal that U.S. Bank did not have standing. *Gunn v. U.S. Bank Nat'l Assoc.*, 23 A.3d 865, 2011 WL 2090203 (Del. 2011) (table). The Delaware Supreme Court noted that the same claim was unsuccessfully raised by Gunn in *Gunn v. U.S. Bank Nat'l Assoc.*, No. 102, 2009 (Del. June 30, 2010) and *Gunn v. U.S. Bank Nat'l Assoc.*, No. 102, 2009 (Dec. 1, 2009). *See Gunn*, 2011 WL 2090203 at *1. The Delaware Supreme Court observed that "[t]he 'law of the case' doctrine, which is well-established in Delaware law, bars re-litigation of any claim that has been previously decided by the [Delaware Supreme] Court in the same

_____

[4]Thus, as the owner of the property at the time of the lawsuit, Plaintiffs unquestionably had standing to bring this lawsuit.

18

proceeding. As such, the prior decisions of [the Delaware Supreme] Court regarding any claim by Gunn became the 'law of the case' in all subsequent stages of the litigation." *Id.* (footnotes omitted) The Delaware Supreme Court concluded that Gunn's standing claims were barred by the "law of the case" doctrine. Gunn has repeatedly raised the standing issue, to no avail.

As I understand what Gunn has raised at this time, there is the question of constitutional standing, and there is a question as to compliance with Rule 17. As to Plaintiff U.S. Bank as Trustee, etc., it was the owner of the property at the time of Gunn's alleged wrongdoing, it suffered any damage, and it therefore has constitutional standing. As to Selective Portfolio Servicing, Inc., it is the servicing agent and attorney-in-fact for U.S. Bank. Plaintiffs state that lack of standing has been "repeatedly rejected by this Court." (D.I. 163 at 3). Three of six items cited in support are filings by the Plaintiff, and the three items by the Court are not directed at SPS in particular. Thus, I am not convinced that I have decided constitutional standing as to SPS already.

There is also a Rule 17 issue, which, as I understand it, involves not so much "standing" as "capacity to be sue or be sued." On Rule 17, I am satisfied that Selective Portfolio Servicing has such capacity. I am quite sure that I have not focused on this issue in relation to U.S. Bank as Trustee, etc., where the issue does not concern U.S. Bank as Trustee, but the EQCC Home Equity Loan Asset Backed Certificates, Series 1998-3.

I believe the best way to resolve this issue is to direct the Plaintiffs to file a letter that addresses the Rule 17 capacity issue as it relates to U.S. Bank National Association as Trustee for the Holders of the EQCC Home Equity Loan Asset Backed

19

Certificates, Series 1998-3, including which particular subsection of Rule 17 is applicable, and, as to Selective Portfolio Servicing, how it has been injured.[5]

## V.    MISCELLANEOUS MOTIONS

Defendant has filed two motions to strike (D.I. 164, 171); one to strike Plaintiffs' opposition to Defendant's motion to dismiss (D.I. 164), and the other to strike Plaintiffs' opposition to Defendant's motion to disqualify Plaintiff's counsel.  (D.I. 171).  The Court finds neither motion well-taken and they will be denied.

Defendant moves to disqualify Plaintiffs' counsel.  (D.I. 165).  Defendant has moved to disqualify Plaintiffs' counsel in various courts raising the same or similar grounds as in the instant motion.  To date, each motion has been rejected.  (See D.I. 169).  Having considered the instant motion and Plaintiffs' response, the Court finds that Defendant has failed to show that continued representation would be impermissible. See Elonex I.P. Holdings, Ltd. v. Apple Computer, Inc., 142 F. Supp. 2d 579, 581 (D. Del. 2001).  Accordingly, the Court will deny the motion to disqualify Plaintiffs' counsel. (D.I. 165).

Finally, Defendant moves for an independent inquiry and rule to show cause why attorney Dorothy Davis should not be disbarred based upon his numerous allegations of her misconduct. (D.I. 166).  Having reviewed the record, the Court finds no indication that Davis has engaged in professional misconduct to warrant either an

---

[5] The Court requests Plaintiffs file their letter by March 12, 2014, and that Defendant file any responsive letter by March 19, 2014.  No other submissions are allowed. Plaintiffs should address the legal effect, if any, of the Certificates maturing, if that is what has happened.   If either party refers to items already in the record, the items should be specifically identified by D.I. No., with a specific page reference.

20

independent inquiry or a show cause order.  Therefore, the Court will deny the motion.

## VI.    CONCLUSION

For the reasons set forth above, the Court will deny Plaintiffs' motion for

summary judgment (D.I. 97), will strike as untimely Defendant's cross-motion for

summary judgment (D.I. 150) and Defendant's motion to dismiss (D.I. 159), and will

deny Defendant's motions to strike (D.I. 164, 171), motion to disqualify Plaintiffs'

counsel (D.I. 165), and motion for an independent inquiry and an order to show cause.

(D.I. 166).

A separate Order, consistent with this Memorandum Opinion, will be entered.