IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION as Trustee for the Holders of the EQCC Home Equity Loan Asset Backed Certificates, Series 1998-3 and SELECT PORTFOLIO SERVICING, INC., | : : : : : : | |
| Plaintiffs, | : : | |
| v. | : : | Civ. No. 11-1155-RGA |
| LA MAR GUNN, | : : | |
| Defendant. | : : | |

Francis G. X. Pileggi, Dorothy Davis, and Jill Kornhauser Agro, Esquires; Eckert Seamans Cherin & Mellott, LLC, Wilmington, Delaware; Counsel for Plaintiffs.

La Mar Gunn, Camden Wyoming, Delaware; Pro Se Defendant.

## MEMORANDUM OPINION

March 25, 2014
Wilmington, Delaware

Rubard G. Andrews
**ANDREWS, U.S. District Judge:**

Pending before the Court is Defendant's motion to dismiss (D.I. 159), opposed
by Plaintiffs (D.I. 163). The Court has jurisdiction pursuant to 28 U.S.C. § 1332. For
the reasons given below, the Court will deny Defendant's motion.

At issue is property located in Bear, Delaware. Defendant La Mar Gunn
asserted that he was the owner of property, but Delaware State Courts have ruled he
was not. The property was the subject of a foreclosure action commenced in July 2002
by Plaintiff U.S. Bank as the Trustee for the holders of the EQCC Home Equity Loan
Asset Backed Certificates, Series 1998-3. On December 9, 2008, the property was
sold to U.S. Bank, and it was the record owner of the property when this cause of action
was commenced on November 21, 2011. The property was sold to a third party in
2012. Plaintiff Select Portfolio Servicing, Inc. is the servicing agent and attorney-in-fact
for U.S. Bank.

In the Court's March 4, 2014 Memorandum Opinion and Order (D.I. 174, 175), it
ruled on all pending motions, but held in abeyance the instant motion to dismiss
pending additional submissions by the parties in support of their positions on two
issues: (1) the constitutional standing of SPS and how it has been injured;[1] and
(2) which particular subsection of Fed. R. Civ. P. 17 is applicable to U.S. Bank.[2] (*See*

---

[1]The Court found that SPS has the capacity to sue or be sued pursuant to Fed.
R. Civ. P. 17.

[2]The Court found that U.S. Bank has constitutional standing to proceed because
it was the owner of the property at the time of Gunn's alleged wrongdoing.

2

D.I. 174 at 20). The parties made the additional submissions. (D.I. 176, 177).[3]

A Pooling and Servicing Agreement created the EQCC Home Equity Loan Trust 1998-3, by and among Equicredit Corporation of America, as representative and as servicer, EQCC Receivables Corporation and EQCC Asset Backed Corporation as depositors, and U.S. Bank National Association as Trustee. See http://www.secinfo. com/dRSm6.7Qa.d.htm. Legal title to the Trust's assets, including the mortgage on the property at issue, was transferred to U.S. Bank as Trustee. (D.I. 159, exs. 1, 2). According to Plaintiffs, on December 6, 2001, Equicredit entered into a subservicing agreement with SBS (formerly known as Fairbanks Capital Corporation), and SBS began acting as the subservicer for Equicredit for the Trust in accordance with the terms of the Pooling and Servicing Agreement.[4] (D.I. 177 at 2). Plaintiffs represent that Equicredit ultimately purchased the Trust's assets (the date was not provided) which resulted in repayment of the bond and transfer of the Trust's assets to Equicredit. (Id.) The bond issue made its final payment on December 15, 2005. (D.I. 159, ex. 3). Plaintiffs further represent that Equicredit is now the holder of the assets of the Trust, including the loan associated with this action, the underlying note, mortgage, related collateral property, and all rights and interests therein. (D.I. 177 at 2). SPS continues to service the loan for Equicredit and to hold powers of attorney to act on behalf of Equicredit and U.S. Bank. (D.I. 1, ¶ 2; D.I. 177, ex.).

---

[3]The Defendant also filed a motion for reconsideration (D.I. 178), which will be addressed in due course.

[4]The September 30, 2002 assignment reflects that it was filed for Equicredit by AIF Fairbanks Capital Corp. (D.I. 159, ex. 1).

3

**SPS Standing.** Under Fed. R. Civ. P. 12(b)(1), a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim. "A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). In evaluating a Rule 12(b)(1) motion, a court must first determine whether the movant presents a facial or factual attack. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

Here, Gunn presents a factual attack as to the standing of SPS. In reviewing a factual challenge to the Court's subject matter jurisdiction, the Court is not confined to the allegations of the complaint, and the presumption of truthfulness does not attach to the allegations in the complaint. *Mortensen*, 549 F.2d at 891. Instead, the Court may consider evidence outside the pleadings, including affidavits, depositions and testimony, to resolve any factual issues bearing on jurisdiction. *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997). Once the Court's subject matter jurisdiction over a complaint is challenged, the plaintiff bears the burden of proving that jurisdiction exists. *Mortensen*, 549 F.2d at 891.

Gunn contends that SPS engaged in fraud on the court by claiming in Delaware courts that the real party and Trust was EQCC Home Equity Loan Trust 1998-2, not EQCC 1998-3. He argues that SPS' power to act as servicer for the Trust (i.e., 1998-3) ceased by the Trust's termination pursuant to an agreement of all beneficiaries. Plaintiffs argue that a loan servicer is a real party in interest with standing in cases where the loan serviced by the servicer is the subject of litigation. They contend that

4

the injury sustained by SPS is ongoing and that damages will not be liquidated until a

final accounting takes place for loss with regard to the property and repayment to SPS

for its advances pursuant to the subservicing agreement and Pooling and Servicing

Agreement.

Case law supports Plaintiffs' position, most notably *CWCapital Asset Mgmt.,*

*LLC v. Chicago Properties, LLC,* 610 F.3d 497, 500 (7th Cir. 2010). In *CWCapital*, the

United States Court of Appeals for the Seventh Circuit rejected the argument that the

servicer was not the real party in interest, finding that the "trust holds merely the bare

legal title; the Pooling and Servicing Agreement delegates what is effectively equitable

ownership of the claim (albeit for eventual distribution of proceeds to the owners of the

tranches of the mortgage-backed security in accordance with their priorities) to the

servicer." *Id.* at 501; *see also Greer v. O'Dell,* 305 F.3d 1297, 1302 (11th Cir. 2002)

(finding that a "loan servicer is a 'real party in interest' with standing to conduct . . . the

legal affairs of the investor relating to the debt that it services").

The language of the SPS Pooling and Servicing Agreement is very similar that in

*CWCapital.* Pursuant to the subservicing agreement, SPS has broad powers "to do any

and all things . . . which the Servicer may deem necessary or desirable." (D.I. 177, ex.

at § 5.01(b). The agreement further provides that "the Trustee shall furnish [SPS] with

any powers of attorney and other documents necessary or appropriate to enable [SPS]

to carry out its servicing and administrative duties." (*Id.* at § 5.01(f)). In addition, SPS

explains it was injured by Gunn's alleged acts that prevented it from concluding the

administration of the mortgage asset and receiving the full payment it would have been

entitled to had Gunn not prolonged the foreclosure, continued related litigation, or

5

diminished the value of the property. (D.I. 177 at 8-9). Considering the above, the Court concludes that SPS has constitutional standing in this matter and will, therefore, deny Gunn's motion to dismiss SPS for lack of standing.

**U.S. Bank, Fed. R. Civ. P. 17**. Rule 17(a) states that "[e]very action shall be prosecuted in the name of the real party in interest," and provides for dismissal of actions if the real party in interest is not substituted or joined. Fed. R. Civ. P. 17(a). This rule ensures that under the "governing substantive law, the plaintiffs are entitled to enforce the claim at issue." *Feriozzi Co., Inc. v. Ashworks, Inc.*, 130 F. App'x 535, 539 (3d Cir. 2005). However, a court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. *See* Fed. R. Civ. P. 17(a)(3). Rule 17(a)(1)(E) provides that a trustee may sue in its own name without joining the person for whose benefit the action is brought, and Rule 17(a)(1)(F) provides that a party with whom or in whose name a contract has been made for another's benefit may sue in his own name.

Rule 17(b) defines when a party has the capacity to sue or be sued in federal court. Unlike the doctrines of standing and real-party-in- interest, "capacity is conceived to be a party's personal right to litigate." *Lundquist v. University of S. Dakota Sanford Sch. of Med.*, 705 F.3d 378, 380 (8th Cir. 2013). U.S. Bank is not a person or a corporation. It is a national banking association and, therefore, it falls under the ambit of Rule 17(b)(3). (D.I. 1, ¶ 1). Accordingly, its capacity is determined by the laws of the State of Delaware. *See* Fed. R. Civ. P. 17(b)(3).

Gunn contends that the Trust ceased to exist on November 15, 2005 when it made its final payment and, therefore, U.S. Bank lacks legal capacity to maintain this action.[5]  Plaintiffs argue that U.S. Bank, as the record title holder to the property at the time this action was filed by virtue of the 2002 foreclosure action, and as Trustee, has the capacity to pursue the claims herein even though Equicredit may ultimately benefit. Plaintiffs indicate that, even though the certificateholders for the Trust were paid, the trailing duties of administration for this asset in the name of the Trustee are necessary and proper, even though it is for the ultimate benefit of Equicredit.  (D.I. 177 at 5).  It is Plaintiffs' position that U.S. Bank has the capacity to sue either under Rule 17(a)(1)(E) or Rule 17(a)(1)(F).  (Id.)

"Rule 17(a) indicates that a trustee of an express trust 'may' sue in its own name without joining the trust as a plaintiff." Emerald Investors Trust v. Gaunt Parsippany Partners, 492 F.3d 192, 199 (3d Cir. 2007).  Delaware law provides that a trustee may exercise powers as appropriate to wind up the administration of the estate and to distribute the trust property to the persons entitled to it. See 12 Del. C. § 3325(27).  In addition, the Pooling and Servicing Agreement entered into by and among Equicredit Corporation of America, EQCC Receivables Corporation and EQCC Asset Backed Corporation, and U.S. Bank National Association provides U.S. Bank the capacity to

---

[5]A trust's termination does not terminate the payment obligations on the mortgages in the trust. See Jaimes v. JPMorgan Chase Bank, N.A., 2013 WL 677740, at *4 (N.D. Ill. Feb. 25, 2013); Upperman v. Deutsche Bank Nat'l Trust Co., 2010 WL 1610414, at *3 (E.D. Va. Apr. 16, 2010) ("[t]here is no authority . . . that the mere existence of a pooling and servicing agreement or investment trust can relieve borrowers of their obligations to perform under a duly executed promissory note and deed of trust.")

7

initiate and maintain this suit. *See* Pooling and Servicing Agreement, §§ 12.01, 12.12

Duties of Trustee at http://www.secinfo.com/dRSm6.7Qa.d.htm. In light of the

foregoing, the Court finds that U.S. Bank possessed the capacity to sue under Rule

17(a). Therefore, the Court will deny Gunn's motion to dismiss U.S. Bank.[6]

For the reasons set forth above, the Court will deny Defendant's motion to

dismiss (D.I. 159).

A separate Order, consistent with this Memorandum Opinion, will be entered.

---

[6]In the alternative, Plaintiffs ask the Court for permission to substitute Equicredit as Plaintiff for the Trustee as the Trustee's successor, should the court determine that U.S. Bank does not have Rule 17 capacity. As previously discussed, Equicredit exercised its rights under the Pooling and Service Agreement and purchased the Trust's assets and it is now the holder of the assets of the Trust. The Court does not entertain substitution given the finding that U.S. Bank has the capacity to initiate and maintain this action.