IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION as Trustee for the Holders of the EQCC HOME EQUITY LOAN ASSET BACKED CERTIFICATES, SERIES 1998-3 and SELECT PORTFOLIO SERVICING, INC., <br><br> Plaintiffs, <br><br> v. <br><br> LA MAR GUNN, <br><br> Defendant. | No. 11-cv-01155-RGA |

Memorandum Opinion

Dorothy A. Davis, Esq., Eckert Seamans Cherin & Mellott, LLC, Pittsburgh, PA; Peter S. Murphy, Esq., Eckert Seamans Cherin & Mellott, LLC, Wilmington, DE; for the Plaintiffs.

La Mar Gunn (pro se); for the Defendant.

August 5, 2015

1

*[signature]*
**ANDREWS, UNITED STATES DISTRICT JUDGE:**

Before this Court is Plaintiffs' Renewed Motion for Judgment as a Matter of Law (D.I. 250) and Plaintiffs' Motion for a New Trial (D.I. 252). Both motions have been fully briefed. (D.I. 253, 256, 258).[1]

This Court held a three-day jury trial on the issues in this case beginning November 17, 2014. (D.I. 238, 241, 247). Before the case was submitted to the jury, Plaintiffs moved for judgment as a matter of law. (D.I. 247 at 42). This Court denied the motion with respect to tortious interference with prospective business opportunities but reserved judgment as to trespass. *Id.* at 43.

This matter relates to a property dispute. At trial, the jury determined two issues, whether Defendant had committed trespass to property, and whether Defendant had committed tortious interference with prospective business opportunities. (D.I. 240 at 11-14). The jury heard evidence related to a conversion claim, but this Court ultimately granted a motion for judgment as a matter of law on the conversion claim because Plaintiffs sought damages to real estate rather than to chattels. (*See* D.I. 247 at 3-4). This Court instructed the jury that it was an established fact that Plaintiffs owned the property at question from December 9, 2008 to May 12, 2012. (D.I. 238 at 188-89). The Court also instructed the jury that Defendant's references to his belief that he owned the property during that time were admitted for the limited purpose of proving his state of mind or motivation, as they relate to the claims. *Id.*

---

[1] In his opposition brief to Plaintiffs' motions, Defendant also makes unrelated requests for damages and fee-shifting under Delaware's anti-SLAPP statute. (D.I. 256 at 11-15). Because Defendant has not demonstrated that Plaintiffs acted in bad faith with their lawsuit or their present Motions, this Court will not grant such damages.

2

Defendant proceeded *pro se* in this case. Statements made in his capacity as his own attorney, such as in his opening statement, were not treated as evidence. (*See* D.I. 240 at 4 ("The lawyers' statements and arguments, including Mr. Gunn's statements when he is not on the witness stand, are not evidence. The arguments of the lawyers and Mr. Gunn are offered solely as an aid to help you in your determination of the facts.")).

In their Renewed Motion for Judgment as a Matter of Law, Plaintiffs argue that the Court should grant judgment as a matter of law with respect to the trespass claim, or in the alternative, on their claims of unjust enrichment.[2] (D.I. 250). In their Motion for a New Trial, Plaintiffs incorporate their same argument from the Renewed Motion for Judgment as a Matter of Law to demonstrate that the verdict was against the weight of the evidence for the claim of trespass. (D.I. 253 at p. 5). Plaintiffs also argue that they are entitled to a new trial because Defendant engaged in improper conduct at trial, presented improper state of mind evidence, and offered improper defenses and counterclaims. (D.I. 253).

For the following reasons, both motions shall be **DENIED**.

## I.  LEGAL STANDARD

### A. Judgment as a Matter of Law

Judgment as a matter of law is appropriate if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for [a] party" on an issue. Fed. R. Civ. P. 50(a)(1). "Entry of judgment as a matter of law is a 'sparingly' invoked remedy, 'granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage

---

[2] In its pre-trial order, this Court determined that because unjust enrichment is an equitable claim, it would be determined by the Court if necessary. (D.I. 232 at 4). This Court expressed doubts about the claim because it appeared to seek the same damages as the other claims, suggesting that Plaintiffs had an adequate remedy at law. *Id.*

3

of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability.'" *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007) (citation omitted).

In assessing the sufficiency of the evidence, the Court must give the non-moving party, "as [the] verdict winner, the benefit of all logical inferences that could be drawn from the evidence presented, resolve all conflicts in the evidence in his favor and, in general, view the record in the light most favorable to him." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1348 (3d Cir. 1991). The Court must determine whether the evidence supports the jury's verdict. *See Gomez v. Allegheny Health Servs. Inc.*, 71 F.3d 1079, 1083 (3d Cir. 1995) (describing standard as "whether there is evidence upon which a reasonable jury could properly have found its verdict"); 9B *Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure* § 2524 (3d ed. 2008) ("The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury might reasonably find a verdict for that party.").

Where the moving party bears the burden of proof, as is the case here, the Third Circuit applies a different standard. This standard "'requires the judge to test the body of evidence not for its insufficiency to support a finding, but rather for its overwhelming effect.'" *Fireman's Fund Ins. Co. v. Videfreeze Corp.*, 540 F.2d 1171, 1177 (3d Cir. 1976) (quoting *Mihalchak v. Am. Dredging Co.*, 266 F.2d 875, 877 (3d Cir. 1959)). The Court "'must be able to say not only that there is sufficient evidence to support the finding, even though other evidence could support as well a contrary finding, but additionally that there is insufficient evidence for permitting any different finding.'" *Fireman's Fund*, 540 F.2d at 1171 (quoting *Mihalchak*, 266 F.2d at 877).

**B. Motion for a New Trial**

4

Federal Rule of Civil Procedure 59(a)(1)(A) provides, in pertinent part: "The court may, on motion, grant a new trial on all or some of the issues—and to any party—... after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court...." Among the most common reasons for granting a new trial are: (1) the jury's verdict is against the clear weight of the evidence, and a new trial must be granted to prevent a miscarriage of justice; (2) newly discovered evidence exists that would likely alter the outcome of the trial; (3) improper conduct by an attorney or the court unfairly influenced the verdict; or (4) the jury's verdict was facially inconsistent. *See Zarow-Smith v. N.J. Transit Rail Operations, Inc.*, 953 F. Supp. 581, 584–85 (D.N.J. 1997).

The decision to grant or deny a new trial is committed to the sound discretion of the district court. *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980); *Olefins Trading, Inc. v. Han Yang Chem. Corp.*, 9 F.3d 282, 289 (3d Cir.1993) (reviewing district court's grant or denial of new trial motion under the "abuse of discretion" standard). Although the standard for granting a new trial is less rigorous than the standard for granting judgment as a matter of law—in that the Court need not view the evidence in the light most favorable to the verdict winner—a new trial should only be granted where "a miscarriage of justice would result if the verdict were to stand," the verdict "cries out to be overturned," or where the verdict "shocks [the] conscience." *Williamson*, 926 F.2d at 1352–53.

## II. Discussion

### A. Trespass to Real Estate

Under either a motion for judgment as a matter of law or motion for a new trial, Plaintiffs have not demonstrated that the jury's verdict is contrary to the "overwhelming effect" of the evidence or that it was against the clear weight of the evidence.

This Court agrees with Plaintiffs that trespass is a strict liability offense, where the defendant's state of mind is irrelevant. (D.I. 250 at 3). Consistent with Delaware law, this Court charged the jury that Plaintiffs must prove the following three elements to establish the tort of trespass:

> (1) the Plaintiffs had lawful possession, or the right of occupancy, of the Property;
> (2) the Defendant entered onto the Plaintiffs' Property without consent or privilege; and
> (3) the Plaintiffs were harmed by the entry.

(D.I. 240 at 11); *see also Kuhns v. Bruce A. Hiler Delaware QPRT*, 2014 WL 1292860, at *19 (Del. Ch. Mar. 31, 2014).

As mentioned previously, this Court took judicial notice of Plaintiffs' lawful possession of the property during the time at question. The Court thus agrees with Plaintiffs that the first element of the claim was established. (D.I. 250 at 4).

Plaintiffs argue that "Defendant conceded that he occupied the Property during the time it was owned by Plaintiffs." (D.I. 250 at 4). Not exactly right. Plaintiffs have not pointed to any evidence in the record where Defendant conceded that point. Plaintiffs first point to a statement made by Defendant during his opening statement. (*See* D.I. 250 at 1-2; (citing D.I. 238 at 121 ("I would spend the next several years repairing and improving this property as my dream home."))). Defendant was *pro se*. His opening statement could not be treated as evidence, as the Court instructed the jury. (D.I. 240 at 4 ("The lawyers' statements and arguments, including Mr. Gunn's statements when he is not on the witness stand, are not evidence. The arguments of the lawyers and Mr. Gunn are offered solely as an aid to help you in your determination of the facts."); *Cf. United States v. Sacco*, 563 F.2d 552, 557 (2d Cir. 1977) (" ... to avoid any ambiguity in the jury's mind about the unsworn statements of a pro se defendant, it should be made clear to the jury at the outset that anything he says in his 'lawyer' role is not evidence

6

against him or a co-defendant, and his remarks are to be regarded no differently than those of the attorneys in the case."). Even if his opening statement were treated as evidence, it would not establish that Defendant entered the property without consent when Plaintiffs owned the property. The opening statement only vaguely refers to some period of "several years" after 2003. Until December 9, 2008, Plaintiffs did not own the property. A jury could reasonably have determined that Defendant conducted any improvements or repairs when Plaintiffs did not own the property, or even at a time when Defendant had permission to enter the property. Entering the property without permission does not follow from the Defendant's statement.

The only testimony Plaintiffs rely on to argue that Defendant entered the property without consent relates to moving out of the property. (*See* D.I. 250 at 2; (citing D.I. 238 at 251 "Q: So you started moving out of 201 Cornwell several weeks before February 1st of 2011; is that correct? A: I started the process. Yes, that's correct.")). Unlike the earlier statement, this statement is evidence because Defendant was asked this question while on the witness stand. Nonetheless, a reasonable jury did not have to conclude from this evidence that Defendant entered the property without consent. Without more, moving out of a property does not necessarily imply entering it without consent. Starting the move out process could mean any number of things. Furthermore, when this statement is placed within the context of his testimony, it would not have been unreasonable for the jury to conclude that even if Defendant entered this property "several weeks before" February 1, 2011, he may have done so with consent. The immediately previous question in the transcript reads:

> Q. When did you move your possessions out of 201 Cornwell?
> A. The property is 6500 square feet. The process of moving took several weeks. And even after the sheriffs had showed up at the property, there were still things, my personal belongings in the property that, you know, despite all the other activity in the property, I couldn't move at the time and needed assistance. And the sheriffs were -- I waited for the

7

> sheriffs to arrive or to contact me that they were there, and there's Ms. England or someone around here as your witness.
> And then I arrived after your attorneys and the Sheriff were there and I was permitted to move additional things out of the property that would take several people to move.

(D.I. 238 at 251).

Based on this testimony, a jury could reasonably have concluded that "moving" or "moving out" related to moving items or property from the residence, which may not have required entering the property without consent. Furthermore, Defendant's testimony that he arrived at the property "after your attorneys and the Sheriff were there" and that he was "permitted to move additional things" could lead a reasonable jury to conclude that, even if he entered the property, he did so with consent from the owner. This evidence, despite what Plaintiffs say, does not demonstrate with "overwhelming effect" that Defendant entered the property without consent. Nor does the evidence demonstrate that the verdict was against the clear weight of the evidence.

In their briefing, Plaintiffs repeatedly state, without citing evidence, that there was no evidentiary basis not to find trespass. (D.I. 250 at 4 ("...Defendant conceded that he occupied the Property during the time it was owned by Plaintiffs.")). A plaintiff cannot simply assume something is self-evident without offering any support for it in evidence.[3] Plaintiffs' briefing is surprisingly bare of any evidence admitted at trial, testimony or otherwise, that demonstrates that Defendant entered the property when Plaintiffs owned it without consent. It was Plaintiffs' burden to prove its case in chief to the jury, using evidence. Even if something might seem

---

[3] Plaintiffs called Defendant as a witness. The testimony occupies about thirty pages of transcript. (D.I. 238 at 228-59). He was not asked where he lived between December 9, 2008 and February 1, 2011.

8

obvious or self-evident to one side, absent some evidence introduced at trial, a jury can reasonably think otherwise.

Plaintiffs argue that Defendant "never contested, or presented evidence to the contrary" that he resided at the property when Plaintiffs owned it. (D.I. 250 at 2). This case is Plaintiffs' burden to prove, not Defendant's. Similarly, Plaintiffs point to prior filings, in unrelated cases in unrelated jurisdictions, where Defendant did not contest that he resided at the property during the time in question. (D.I. 250 at 2). It is unclear what, if anything, these filings support. Even so, these unrelated filings were not provided as evidence to the jury, so this Court cannot, and will not, now consider them in post-trial briefing.

## B. Unjust Enrichment

Plaintiffs move, in the alternative, for judgment as a matter of law under an unjust enrichment theory. (D.I. 250 at 5). "Unjust enrichment is defined as the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Schock v. Nash*, 732 A.2d 217, 232 (Del. 1999) (citations omitted) (internal quotation marks omitted). "Courts developed unjust enrichment, or quasi-contract, as a theory of recovery to remedy the absence of a formal contract." *ID Biomedical Corp. v. TM Technologies, Inc.*, 1995 WL 130743, at *15 (Del. Ch. Mar. 16, 1995). In other jurisdictions, it is disfavored to pursue an unjust enrichment claim where plaintiffs are claiming damages for torts such as trespass. *See, e.g., Boring v. Google Inc.*, 362 F. App'x 273, 282 (3d Cir. 2010) ("An unjust enrichment claim makes sense in cases involving a contract or a quasi-contract, but not, as here, where plaintiffs are claiming damages for torts committed against them by the defendant [under Pennsylvania law].") (internal quotation marks omitted) (citations omitted); *see also Boudreaux v. Jefferson Island Storage &*

9

*Hub, LLC*, 255 F.3d 271, 275-76 (5th Cir. 2001) ("Plaintiffs seek, and the law provides, a plausible trespass remedy. Unjust enrichment is not an appropriate cause of action because no gap in the law exists that prevents plaintiffs from pursuing a remedy at law for their alleged injury.") (citations omitted) (internal quotation marks omitted). In Delaware, there is limited case law applying unjust enrichment in torts contexts such as trespass or tortious interference in business opportunities. *See, e.g., Great Am. Opportunities, Inc. v. Cherrydale Fundraising, LLC*, 2010 WL 338219, at *28 n. 303 (Del. Ch. Jan. 29, 2010) ("While Delaware courts have not explicitly addressed the issue of unjust enrichment in tortious interference cases, several jurisdictions have allowed this measure of damages largely on the theory that an intending tortfeasor should not be prompted to speculate that his profits might exceed the injured party's losses, thus encouraging commission of the tort.") (citations omitted) (internal quotation marks omitted).

The Court agrees with Plaintiffs that unjust enrichment, an equitable remedy, requires: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification and (5) the absence of a remedy provided by law." (*See* D.I. 250 at 6; *Fitzgerald v. Cantor*, 1998 WL 326686, at *6 (Del. Ch. June 16, 1998)). Plaintiffs state that they were impoverished because they could not use or sell the property when it was unlawfully possessed by Defendant. (D.I. 250 at 6). It is true that there was no contract governing the parties' relationship, typically a threshold question for unjust enrichment. *See Vichi v. Koninklijke Philips Electronics N.V.*, 62 A.3d 26, 58 (Del. Ch. 2012) ("It is a well-settled principle of Delaware law that a party cannot recover under a theory of unjust enrichment if a contract governs the relationship between the contesting parties that gives rise to the unjust enrichment claim."). Plaintiffs, however, do not cite any evidence

10

demonstrating that Defendant unlawfully possessed their property. Plaintiffs have not
demonstrated that Defendant was enriched and they were impoverished. *See MetCap Sec. LLC
v. Pearl Senior Care, Inc.*, 2007 WL 1498989, at *5 (Del. Ch. May 16, 2007) ("The mere
absence of a contract between the complaining party and the defendant, however, is not
dispositive. Also crucial-but lacking here-is that some direct relationship be alleged between a
defendant's enrichment and a plaintiff's impoverishment."). Finally, unjust enrichment also
requires an absence of a remedy at law, something Plaintiffs have not addressed at all. They had
plausible legal remedies. *See Boudreaux*, 255 F.3d at 275-76. The unjust enrichment claim is
denied.

### C. Motion for a New Trial

Part I of Plaintiffs' Memorandum of Law in Support of its Motion for a New Trial
incorporates its arguments in its Motion for Judgment as a Matter of Law. The Court has already
disposed of those issues above. Plaintiffs raise three other categories of issues in support of their
motion for a new trial: 1) Defendant engaged in improper conduct at trial, 2) the admission of
state of mind evidence was improper, and 3) Defendant presented unsupported defenses and
counterclaims.

#### 1. Defendant's conduct at trial

Plaintiffs argue that Defendant repeatedly made prejudicial comments that Plaintiffs and
their lawyers were deceitful. (D.I. 253 at p. 6). This Court interrupted Defendant when he made
statements about any unlawful conduct related to the home being sold, and struck portions of his
opening statement. (*See, e.g.,* D.I. 238 at 124-27). Plaintiffs did and could make objections to
any such statements. The Court does not believe that these statements created a significant risk
of unfair prejudice to Plaintiffs. Likewise, Plaintiffs take issue with Defendant's statements

11

about the justness of his cause, or the importance of the case to him, but the Court does not believe that these improperly influenced the jury. (D.I. 253 at pp. 8-9; *see, e.g.*, D.I. 247 at 92-93). Any statements that Defendant made that referenced facts not in evidence, perhaps related to his mortgage, do not rise to the level of mandating a new trial. *Id.* Plaintiffs make other less convincing arguments, including that it was improper for Defendant to ask the jury to imagine themselves in his position[4] or that he repeatedly interrupted Plaintiffs' counsel and witnesses with objections.[5] (D.I. 253 at pp. 9-10; *see, e.g.*, D.I. 247 at 94). This did not result in unfair prejudice. Plaintiffs argue that Defendant made prejudicial remarks about opposing counsel (D.I. 253 at pp. 10-11; *see, e.g.*, D.I. 247 at 104-6), but this Court does not believe any such statements improperly prejudiced the jury or reasonably influenced the jury's verdict.

### 2. Admission of state of mind evidence

Plaintiffs argue that allowing Defendant to use state of mind evidence prejudiced Plaintiffs, created an unfair playing field, and created a risk of jury confusion. (D.I. 253 at pp. 11-15). One of the three claims being tried, tortious interference in business opportunities, however, required proving a mental state. This meant, for example, that Plaintiffs had to prove that Defendant knew of Plaintiffs' attempts to sell the property and intentionally or wrongfully interfered with those sales. It was Plaintiffs' decision to pursue a tort claim that allowed the presentation of evidence related to Defendant's mental state,[6] and it was appropriate for

---

[4] Asking the jurors to imagine themselves in Defendant's shoes is, of course, improper argument, but there was no contemporaneous objection. I also keep in mind that Defendant is not a lawyer.

[5] His objections were generally overruled.

[6] In the jury instructions, this Court explained that tortious interference in prospective business opportunities required proving: "(1) Plaintiffs had a reasonable probability of a business opportunity; (2) Mr. Gunn had knowledge of Plaintiffs' attempts to sell the Property; (3) Mr.

12

Defendant to respond with evidence about his state of mind. There was nothing unfairly prejudicial about Defendant being allowed to tell his story or offer his state of mind for the relevant claim. Therefore, it was not improper, as a general matter, that Defendant offered evidence of his state of mind.

### 3. Affirmative defenses and counterclaims.

Plaintiffs argue that Defendant presented unsupported defenses and counterclaims in violation of this Court's ruling. (D.I. 253 at p. 15). It is important to note that nowhere do Plaintiffs say that Defendant explicitly argued any of these defenses. Instead, Plaintiffs characterize various arguments and testimony as affirmative defenses. This is a forced argument because the evidence and testimony in this case served other, proper purposes. When appropriate, this Court interrupted Defendant and instructed the jury to ignore improper argument or testimony. (*See, e.g.*, D.I. 238 at 188-90). On the whole, when Plaintiffs made an objection, the Court sustained it. The objections raised in the briefing were generally not the subject of specific trial objections.

First, Plaintiffs take issue with Defendant's reference to a contract with Plaintiffs, arguing that he was alleging the defense of breach of contract. (D.I. 253 at p. 15). The Court does not believe that this was a "defense." It was an opportunity for Defendant to tell his story, and it related to the claims at issue. The Court does not believe that there was prejudice that warrants a new trial, particularly because the Court, when requested, generally restricted what Defendant could say, and also interrupted Defendant and instructed the jury when appropriate. (*See, e.g.*, D.I. 238 at 179-82, 188-90). Next, the Court does not believe that Defendant's asking about

---

Gunn intentionally and wrongfully interfered with Plaintiffs' attempts to sell the Property; and (4) Mr. Gunn's interference caused harm to Plaintiffs." (D.I. 240 at 12).

13

whether Plaintiffs demanded rent or turned off the utilities was a failure to mitigate defense, an affirmative defense that was never properly pled, as Plaintiffs note.[7] (D.I. 253 at pp. 18-19). As Plaintiffs were required to prove damages, including for the tort of conversion,[8] it was appropriate for Defendant to rebut claims about what damages occurred, and why. It was appropriate for Defendant to ask Plaintiffs' witnesses about requests for rent being directed at Defendant because this related to an assessment of the losses suffered by Plaintiffs as a result of Defendant's conduct in the tortious interference claim. (*See* D.I. 241 at 103-04). Similarly, Defendant's questioning about Plaintiffs turning off utilities also plays into what damage could be attributed to Defendant with respect to the tort of conversion, a claim Plaintiffs had pursued during trial. (*See id.* at 283-85; *see also* D.I. 247 at 3-4). Finally, it was proper for Defendant to discuss improvements he made to the property during his opening statement because that played into his mental state and the damages calculation for the conversion tort. (*See* D.I. 238 at 120-22). None of these examples, in my opinion, warrants a new trial.

### 4. Testimony of Ernest Green

Plaintiffs argue that the Court incorrectly allowed Ernest Green to testify at trial. (D.I. 253 at p. 20). Even though Defendant did not timely identify Mr. Green during discovery, the Court felt that his testimony should be allowed in the interest of justice. Even so, before trial this Court granted Plaintiffs' motion to compel a deposition of Mr. Green if he testified; absent a deposition, Mr. Green could not testify at trial. (D.I. 226, 230). Because Plaintiffs deposed Mr.

---

[7] The jury was not instructed on mitigation of damages.

[8] Conversion allows recovery for damage at the time and place of the tort. Subsequent damage to property, for example water damage caused by Plaintiffs turning off the utilities, would not be recoverable. *See* Restatement (Second) of Torts § 222A (1965) ("In conversion the measure of damages is the full value of the chattel, at the time and place of the tort.").

14

Green before trial, the failure to identify him during discovery was not prejudicial. Therefore a new trial will not be granted on these grounds.

### III. Conclusion

For the above reasons, Plaintiffs' Motion for a Judgment as a Matter of Law, and Motion for a New Trial, are both **DENIED**. An appropriate order will follow.